UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 16-23535-CIV-MORENO

BLACKBERRY LIMITED.,

    Plaintiff,

v.

BLU PRODUCTS, INC.,

    Defendant.

**PLAINTIFF BLACKBERRY LIMITED'S RESPONSE TO BLU PRODUCTS, INC.'S MOTION TO CONTINUE PRETRIAL DEADLINES**

BlackBerry Limited (BlackBerry) submits this opposition to BLU Products Inc.'s (BLU) Motion to Continue Pretrial Deadlines. (*See* DE 93). The declaration of Ching-Lee Fukuda in support of this Motion is attached as Ex. 1.

**I.  INTRODUCTION**

BLU fails to take responsibility for its failure to meet the Court's deadlines. BLU has known the bases of BlackBerry's infringement claims since August 16, 2016, when BlackBerry filed the original complaints with the infringement claims outlined in claim-chart-level detail. There has been nothing dilatory about BlackBerry's behavior that BLU can use to justify its failure to serve expert reports or comply with discovery deadlines. Ultimately, BLU argues it is unhappy with White & Case's representation. But, BLU's relationship with White & Case and the scope and quality of work it provided is a matter between White & Case and BLU, not a reason to impose extra burdens on the Court or BlackBerry. And to the extent that the Court

considers the performance of White & Case or the nature and scope of its representation to be relevant to deciding BLU's motion, BLU has waived any privilege in such topics and BlackBerry should be entitled to explore exactly what BLU understood about White & Case's role, the discussions they had, and when BLU first tried to retain other counsel.

## II.     FACTUAL BACKGROUND

According to BLU's website, it is the "Fastest Growing Mobile Manufacturer" and claims that "BLU has shipped over 50 million devices to date, and continues to grow at a rapid pace."[1]  Its website also says "BLU is pioneering the advancement of the prepaid and no-contract revolution by providing a vast portfolio of advanced, unlocked mobile phones to thousands of dealer agents, MVNO's [(Mobile Virtual Network Operators)], and large retailers throughout the United States and Latin America."[2]

BlackBerry filed its two complaints five months ago.  (*See* DE 1 in Civil Action 1:16-cv-23535 and DE 1 in Civil Action 1:16-cv-23536, both filed on August 16, 2016).  The First Amended Complaint (DE 16 in Civil Action 1:16-cv-23535) consolidated the two cases following the Court's *sua sponte* dismissal of Case Number: 16-cv-23536.  (*See* DE 15). However, the First Amended Complaint did not change the asserted patents, accused products, or bases of infringement.  And the First Amended Complaint included the same claim-chart-level infringement contentions that BlackBerry included in its original complaints.

White & Case appeared for BLU on September 20, 2016, just eight days after BlackBerry filed the First Amended Complaint.  (DE 19).  Two days later, White & Case, on BLU's behalf, moved for a 30-day extension to respond to the Complaint.  (DE 20).  On November 4, 2016, BLU moved to dismiss several counts under Fed. R. Civ. P. 12(b)(6) (*see* DE 25) and filed its

---

[1] http://bluproducts.com/about-us/  (last visited Jan. 15, 2017).
[2] http://bluproducts.com/into-blu/blu-news (last visited Jan. 15, 2017).

Answer (DE 26).  In addition to listing White & Case, both papers filed on November 4 list Mr. Bernard Egozi as counsel for BLU Products, Inc. in the signature block, although he had not formally appeared in this case.  Mr. Egozi regularly represents BLU in patent infringement cases. *See, e.g.*, *Morpho Komodo LLC v. BLU Prods., Inc.*, Case No. 2:15-cv-1100-JRG-RSP, DE 10 (E.D. Tex. Jun. 19, 2015).  Thus, at least as early as November 4, BLU appears to have had two law firms acting on its behalf in the litigation.

On the morning of Friday, January 6, just two business days before opening expert reports were due and only 24 days before the close of discovery, White & Case moved to withdraw as counsel.  (*See* DE 83).  Nevertheless, BlackBerry served opening expert reports on BLU's counsel, Mr. Egozi, in accordance with the Court's deadline.

### III.   DISCUSSION

#### A.   BLU HAS NOT SHOWN GOOD CAUSE FOR A CONTINUANCE

At its core, BLU's motion argues that the Court should grant a continuance because (1) the Court's scheduling order is, in BLU's eyes, unreasonable and (2) an internal dispute with BLU's former counsel has left it unprepared.  Neither is an appropriate basis for altering the Court's schedule.  The Court's schedule, while demanding, is achievable as BlackBerry has complied with every deadline to date.  Further, BLU has no cause to complain about the schedule because BlackBerry set forth its infringement theories in complaints it served on BLU at least five months ago, which provided BLU with sufficient time to complete the fundamental litigation task of serving expert reports on the issues for which it bears the burden of proof. Lastly, BLU's peripheral dispute with White & Case does not justify burdening the Court's docket and BlackBerry with delay.

A district court has the inherent power to manage its docket.  Indeed, the Eleventh Circuit has called this authority "unquestionable."  *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253,

3

1262 (11th Cir. 2014) (quoting *Canada v. Mathews*, 449 F.2d 253, 255 (5th Cir. 1971)).  It is further undisputed that "[t]his authority includes 'broad discretion in deciding how best to manage the cases before them'" by imposing deadlines for litigation milestones.  *See Smith*, 750 F.3d at 1262 (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997)).  BLU cannot and has not shown good cause for a continuance.

> **1.     Blackberry Has Been Diligent: It Disclosed Its Infringement Theories Five Months Ago and Blackberry Has Met Every Deadline**

BLU has no basis for asserting BlackBerry has been dilatory because BlackBerry has complied with every deadline without seeking an extension.

The Court issued the Scheduling Order on November 15, 2016, and in less than a week the parties had conferred under LR 16.1.  Discovery opened on November 21, 2016, and BLU served interrogatories on BlackBerry the same day seeking from BlackBerry, *inter alia*, an identification "on an element-by-element basis, in claim chart form, how each element of each ASSERTED CLAIM is satisfied by the product or service."  Fukuda Decl. Ex. B ("BLU's Interrogatories").  BlackBerry timely produced documents and served responses to BLU's first round of discovery on December 21, 2016,[3] including responses to BLU's first set of interrogatories.[4]  Fukuda Decl. Ex. C (service e-mail).  Likewise, on January 10, 2017, BlackBerry served its opening expert reports in accordance with the court-ordered deadlines.  Fukuda Decl. Ex. D (service e-mail).

BlackBerry first disclosed its infringement allegations in the original complaints filed five months ago, in August 2016.  (*See* DE 1 in Civil Action 1:16-cv-23535 and DE 1 in Civil

---

[3] While BLU asserts that BlackBerry served its interrogatory responses on December 23, 2016, BlackBerry actually served its interrogatory responses on December 21, 2016.  Fukuda Decl. Ex. C.

[4] BlackBerry's response to BLU's Interrogatory No. 1 is what BLU refers to in its motion as BlackBerry's infringement "contentions."

4

Action 1:16-cv-23536, both filed on August 16, 2016). The original complaints collectively contained over 100 pages of claim-chart-level detail, identifying representative claim(s) for each patent and a mapping of each limitation of the claims to the relevant features of the accused products. The First Amended Complaint filed on September 12, 2016 (DE 16 in Civil Action 1:16-cv-23535) combined the two actions and was necessitated by the Court's *sua sponte* dismissal of the second action. However, the amended complaint did not change the asserted patents, accused products, or bases of infringement.

The original complaints provided BLU with substantially the same information as BlackBerry's later interrogatory response. For example, attached as Fukuda Decl. Exhibit A is a side-by-side comparison for one representative patent of the allegations in the original complaint with BlackBerry's contention interrogatory response. As this comparison shows, the original complaint filed five months before the date for opening expert reports provided element-by-element detailed allegations that were substantially the same as the interrogatory responses. To a large extent, BLU thus knew early on what claims were at issue. To the extent that claims were added in the interrogatory response, they depend on previously identified claims or are otherwise not substantially different from claims that BLU already knew about.

### 2. BLU's Inability to File Expert Reports Is Its Own Fault

The Court's scheduling order directed BLU to perform a fundamental litigation task—serve expert reports on the issues for which BLU bears the burden or proof. BLU as the accused infringer in this patent case bears the well-understood burden of contending that the asserted claims are invalid under §§ 102, 103, or 112 of the Patent Act. BLU argues that this task was "impossible" because it had only eighteen days to analyze the validity of the asserted patents. But BLU's invalidity analysis under §§ 102, 103, or 112 does not require discovery from BlackBerry. Indeed, BLU's own actions show that it could, and did, begin its invalidity analysis

5

well before it received BlackBerry's interrogatory response. BLU just failed to finish the job, and alleges a dispute with its counsel to excuse its lateness.

BLU's responses to BlackBerry's interrogatories show that BLU started analyzing the patents and developing invalidity defenses long before BLU received BlackBerry's infringement contentions. BlackBerry served an interrogatory on BLU on November 22, 2016, seeking BLU's position on the validity of the asserted patents. BLU responded on December 27, 2016—just six days after receiving BlackBerry's infringement "contentions"—by serving 234 pages of invalidity claim charts for four of the asserted patents. (*See* Fukuda Dec. at ¶7). If BLU could prepare 234 pages of invalidity claim charts for four of the patents by December 27, 2016, that demonstrates that it was not only possible for BLU to prepare its defenses before it received BlackBerry's contentions, but also that BLU actually did so. And if there was time for BLU to prepare invalidity charts for four patents, BLU had time to also prepare invalidity charts for the other patents.

Further evidence suggests that BLU began preparing its invalidity case well before the December 23, 2016 date it represented to the Court. For example, Robert Zeidman states that he has "recently been retained to **assist** in the preparation of declarations to support petitions for inter parties review of some of the patents that are at issue in the above-captioned litigation." (*See* DE 93, Ex. 1 at 1) (emphasis added).[5] More importantly, Mr. Zeidman states that "I have been informed that there **are ongoing searches commissioned** by [BLU] Products **prior to the**

---

[5] Inter partes review is a patent office proceeding that allows a person to challenge the validity of a patent under §§ 102 and 103 based on written prior art. *See* 35 U.S.C. § 311 ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.").

**identification of claims at issue** to identify prior art that may invalidate the patent claims asserted in this litigation." (*See* DE 93, Ex. 1 at 1) (emphasis added).

Moreover, BLU's own motion demonstrates that it could have met the Court's deadline for serving expert reports had it acted promptly. The evidence shows that BLU's invalidity analysis started with information that BLU has had in its possession since the original complaints were filed. As John Li states, BLU began preparing its invalidity case by searching for prior art challenging the independent claims that BlackBerry identified in the original complaints. (*See* DE 93, Ex. 2 at 2) ("[W]e proposed to **focus our initial search efforts on the 26 independent claims** at issue." (emphasis added)). Further, the evidence from Mr. Li shows that in about two weeks BLU was able to find prior art addressing at least eight of the asserted patents in this case. (*See* DE 93, Ex. 2 at 2) ("Thus far we have provided search results for the independent claims of eight out of the eleven patents.").

Based on the filing date of the original complaints, BLU had five months' advance notice of the patents and infringement allegations before the deadline to serve opening expert reports. And the facts show that BLU in fact began its invalidity analysis well before December 23, 2016. BLU has failed to demonstrate that it did not have the vast majority of the information it now says it needed. BLU therefore has not shown good cause for a continuance.

### 3.  White & Case Acted As If Representing BLU for the Entire Case

Finally, the Court should not delay this case because of BLU's peripheral dispute with White & Case. White & Case appeared for BLU on September 20, 2016, nearly four months before opening expert reports would be due. It is inconceivable that any law firm, let alone one as eminent as White & Case, would take on an engagement if it were not going to zealously represent its client in all aspects of the case. From all appearances, White & Case represented BLU for all the patents-in-suit. For example, White & Case conferred with counsel for

BlackBerry on all topics required under LR 16.1 and FRCP 26(f) and jointly submitted with BlackBerry's counsel the parties Joint Conference Report.  (*See* DE 55).  Likewise, White & Case sought information from BlackBerry on inventors for all fifteen asserted patents and apparently prepared Letters Rogatory for the inventors of all fifteen patents.  (*See* DE 93 at p. 5 n.2).  Further, as BLU's motion concedes, White & Case served discovery requests on BlackBerry on topics relevant to all fifteen patents-in-suit and prepared discovery responses for all fifteen patents.  (*See* DE 93 at p. 5 n.2).

  BLU presents conflicting positions about the role of White & Case and when the role of White & Case was defined.  In the introduction to its Motion, BLU argues it was not until January 3 that: "BLU was forced to ask its former counsel, White & Case ("W&C"), to withdraw from this matter after reviewing the transcript of the January 3, 2017 hearing before Magistrate Judge O'Sullivan." (*See* DE 93 at p. 2-3).  However, BLU also argues that its November motion to bifurcate issues and extend pretrial deadlines (*see* DE 53) was intended to "provide more time for BLU to find [alternative] representation" "[b]ecause W&C was not protecting BLU's interests on eleven of the fifteen patents at issue."  (DE 93 at p. 3.)  BLU's motion (*see* DE 53) does not argue that it had only managed to secure defense counsel for a portion of the asserted patents and thus needed more time to obtain other counsel.  Instead, in that motion, BLU said nothing about White & Case, arguing only that the complexity of the case and foreign discovery warranted an extended case schedule: the "15 patents at issue cover broad areas of different mobile device fields" and "case will require extensive foreign third-party discovery-- including most of the 34 named inventors of the patents at issue and technical documentation from device manufacturers in Asia-- and at least 19-20 experts." (*See* DE 53 at pp. 1-2).

If anything, BLU's current motion at best suggests that although this litigation was filed on August 16, 2017, BLU waited four months before even looking for counsel to represent it for all of the patents-in-suit: "On December 13, 2016, the Court denied BLU's motion [to bifurcate issues and extend pretrial deadlines], and BLU recognized that it had to immediately find separate counsel to handle the other eleven patents in this matter." (*See* DE 93 at p. 4).[6]

## B. BLU HAS WAIVED ANY PRIVILEGE IN COMMUNICATIONS WITH WHITE & CASE RELATING TO THE REPRESENTATION

To the extent that the Court considers the performance of White & Case or the nature and scope of its representation of BLU to be relevant to BLU's motion, BLU has waived any privilege in such topics and BlackBerry should be entitled to explore exactly what BLU understood about White & Case's role, the discussions they had, and when BLU first tried to retain other counsel.

It is well-settled that "the doctrine of waiver by implication reflects the position that the attorney-client privilege 'was intended as a shield, not a sword.'" *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) (internal citation omitted). Thus, courts in this district often find waiver where the party claiming the privilege puts at issue protected information for its own benefit. *See Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980) ("All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against

---

[6] Even based on BLU's arguments, it appears BLU neglected its "responsibility to keep abreast of litigation in which [it] is involved." *United States v. Arnold*, No. 5:99CV161OC21GRJ, 2001 WL 34106906, at *9 (M.D. Fla. Aug. 15, 2001). "Blind reliance on one's attorney while ignoring the litigation does not entitle a litigant to a do-over if the litigant is unhappy with the result." *Id.*; *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634-35, 82 S.Ct. 1386 (1962); *accord Shuler v. Ingram & Assocs.*, 441 Fed. Appx. 712, 719 (11th Cir. 2011) (per curiam) ("[A] litigant is generally bound by all acts and omissions of his attorney.").

disclosure of such information would have been manifestly unfair to the opposing party" (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)))). That is exactly the case here.

In its motion, BLU relies on communication with White & Case to which BlackBerry is not privy to argue that "W&C was not protecting BLU's interests on eleven of the fifteen patents at issue" (*see* DE 93 at p. 5) and therefore the Court should grant BLU's motion to continue all pretrial deadlines. At the same time, BLU admits that "W&C also handled aspects of the case relating to the other eleven patents, including serving discovery requests within approximately a week of the Scheduling Order directed at all 15 patents, preparing Letters Rogatory for the inventors of all 15 patents and, later, discovery responses addressing all 15 patents" (*see* DE 93 at p. 5 fn. 2). By putting the nature of BLU's relationship with White & Case at issue—particularly the parameters of W&C's representation—BLU has waived any privilege in communications regarding: (1) nature and scope of engagement with White & Case, and (2) communications regarding timing, responsibility or payment for the defense of any patents that the third party indemnitor did not agree to pay for.

## IV.     CONCLUSION

BLU and its counsel, Mr. Egozi, threaten that Cozen will appear only if the Court extends its deadlines, and that otherwise BLU will default. Tactics like this are improper and to accept them would render the Court unable to manage its docket as every defendant that seeks more time could contrive a dispute with its counsel and plead inability to secure replacement counsel within the Court's schedule.

For the reasons stated above, the Court should deny BLU's motion to continue pretrial deadlines. And if the Court is inclined to consider the nature and scope of White & Case representation of BLU, BlackBerry should first be entitled to discovery on what BLU understood

about White & Case's role, the discussions they had, and when BLU first tried to retain other counsel.

Respectfully submitted,

By: */s/ Marcos Daniel Jiménez*

| | |
|---|---|
| Ching-Lee Fukuda (*pro hac vice*) | Marcos Daniel Jiménez (FBN 441503) |
| clfukuda@sidley.com | mjimenez@mwe.com |
| Todd M. Simpson (*pro hac vice*) | Audrey M. Pumariega (FBN 85206) |
| tsimpson@sidley.com | apumariega@mwe.com |
| Caroline Bercier (*pro hac vice*) | MCDERMOTT WILL & EMERY LLP |
| cbercier@sidley.com | 333 SE 2nd Avenue, Suite 4500 |
| SIDLEY AUSTIN LLP | Miami, Florida 33131 |
| 787 Seventh Avenue | Telephone: 305 358 3500 |
| New York, New York 10019 | Facsimile: 305 347 6500 |
| Telephone: 1 212 839 5300 | |
| Facsimile: 1 212 839 5599 | Scott R. Lassar (*pro hac vice*) |
| | slassar@sidley.com |
| Thomas N. Tarnay (*pro hac vice*) | SIDLEY AUSTIN LLP |
| ttarnay@sidley.com | One South Dearborn |
| R. Seth Reich Jr. (*pro hac vice*) | Chicago, Illinois 60603 |
| seth.reich@sidley.com | Telephone: 1 312 853 7000 |
| SIDLEY AUSTIN LLP | Facsimile: 1 312 853 7036 |
| 2021 McKinney Avenue, Suite 2000 | |
| Dallas, Texas 75201 | |
| Telephone: 1 214 981 3300 | |
| Facsimile: 1 214 981 3400 | |

*Counsel of Record
for Plaintiff BlackBerry Limited*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct of the foregoing was served via CM/ECF on January 17, 2017 on the following counsel or parties of record:

Bernard L. Egozi
(Florida Bar No. 152544)
Egozi & Bennett, P.A.
2999 NE 191st Street, Suite 407
Aventura, FL  33180
Telephone: (305) 931-9342
Facsimile:  (305) 931-9343
Email:  begozi@egozilaw.com

*Counsel of Record and Outside General Counsel
for BLU Products, Inc.*

                                                  */s/ Marcos Daniel Jiménez*
                                                  Marcos Daniel Jiménez

DM_US 79083708-1.092211.0028