UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-23535-CIV-Moreno/O'Sullivan

BLACKBERRY LIMITED,

      Plaintiff,

   v.

BLU PRODUCTS, INC.

      Defendant.

_____/

## BLU PRODUCTS, INC.'S REPLY TO BLACKBERRY'S RESPONSE TO MOTION TO CONTINUE PRETRIAL DEADLINES

BLU Products, Inc. ("BLU"), by and through its limited-representation undersigned counsel, respectfully files this Reply to Blackberry Limited's ("Blackberry") Response to Motion to Continue Pretrial Deadlines [DE 94]

The thrust of Blackberry's Response is that the Court should ignore the fact that after BLU's counsel's withdrawal because of an ethical conflict of interest, BLU is unable to secure patent litigation counsel under the current schedule, and that BLU should have been prepared to file expert reports because the Amended Complaint identified the claims at issue on this case. Both assertions are specious.

Blackberry's Amended Complaint [DE 16] identified only 28 of over 500 claims involved in the fifteen patents now at issue in this case. However, these accounted for only **fifteen percent** (15%) of the 184 claims Blackberry finally identified in the 1,000 pages of claim

charts received by BLU on December 23, 2016 in response to BLU's interrogatories.[1]  As Plaintiff, Blackberry knew or should have known, prior to the filing of this action, which of the claims in the patents it contends were allegedly infringed.  It had months, if not years, to prepare this lawsuit.  Nevertheless, it asserts disingenuously that it did not act in dilatory fashion because it complied with all deadlines.  Blackberry's argument is specious in view of the fact that it affirmatively withheld information from BLU about the identity of eighty-five percent of the claims at issue in this matter until it left BLU in a predicament that was impossible for BLU to meet.  BLU noted to the Court when it filed its Motion to Dismiss on November 4, 2016, that Blackberry had refused to identify all claims that were at issue in this matter. D.E. 25, at 29-30.  Contrary to Blackberry's argument, the identification of 28 claims in the Amended Complaint is not sufficient to put BLU on notice of all 184 claims Blackberry eventually raised in this matter.  Notwithstanding BLU's ability to prepare invalidity charts for some of these claims, it was simply not possible for BLU to address all 156 previously unidentified within three weeks (over the Christmas and New Year's Holidays) of Blackberry's identification of same.

Blackberry's original Complaint (D.E. 1), asserted infringement of 13 claims of U.S. Patent Nos. 8,489,868 ("the '868 Patent"), 8,713,466 ("the '466 Patent"), 8,402,384 ("the '384 Patent"), 8,411,845 ("the '845 Patent"), 6,271,605 ("the '605 Patent"), 8,745,149 ("the '149 Patent"), 8,169,449 ("the '449 Patent").  Specifically, the Complaint alleges as follows:

---

[1] BLU's counsel received an email the night of December 21, 2016 containing password credentials to access the information, but upon review, BLU's counsel discovered that information was missing and that Plaintiff's infringement contentions contained illegible and low quality depictions, requiring its counsel to request screenshots the morning of December 22, 2016.  BLU ultimately received legible claim charts and supporting documentation that it could not review until December 23, 2017, despite the fact that it had been requesting the information from Blackberry since November 21, 2016 and Blackberry was ostensibly in possession of this information before it even filed this action.  BLU has no further knowledge regarding the alleged date of service of same.

- "BLU's '868 Accused Products satisfy each and every element of one or more claims of the '868 patent, *for example, and without limitation, claims 1 and 76* of the '868 patent." D.E. #1, at ¶30 (emphasis added).

- "BLU's '466 Accused Products satisfy each and every element of one or more claims of the '466 patent, *for example, and without limitation, claims 1 and 14* of the '466 patent." *Id.*, at ¶50 (emphasis added).

- "BLU's '384 Accused Products satisfy each and every element of one or more claims of the '384 patent, *for example, and without limitation, claims 1 and 4* of the '384 patent." *Id.*, at ¶70 (emphasis added).

- "BLU's '845 Accused Products satisfy each and every element of one or more claims of the '845 patent, *for example, and without limitation, claims 1 and 16* of the '845 patent." *Id.*, at ¶ 87 (emphasis added).

- "BLU's '605 Accused Products satisfy each and every element of one or more claims of the '605 patent, *for example, and without limitation, claims 9 and 25* of the '605 patent." *Id.*, at ¶ 111 (emphasis added).

- "BLU's '149 Accused Products satisfy each and every element of one or more claims of the '149 patent, *for example, and without limitation, claims 1 and 9* of the '149 patent." *Id.*, at ¶ 131 (emphasis added).

- "BLU's '449 Accused Products satisfy each and every element of one or more claims of the '449 patent, *for example, and without limitation, claim 1* of the '449 patent." *Id.*, at ¶ 150.

The Complaint further dedicates approximately 53 pages of cursory analysis alleging infringement of these 13 claims, more than half of which comprises a mere recitation of the claims in dispute, large images, and form paragraphs alleging infringement and claiming damages. *See, e.g. Id.*, at ¶¶ 28-31, 38, 45-51, 57, 65-71, 79, 82-88, 96, 106-112, 118, 126-132, 137, 145-151, 156-158.  The exhibits to the Complaint merely provide copies of these seven patents (totaling 123 pages), and an additional 173 pages of publicly available documents that provide no infringement analysis.  In short, the Complaint seeks to provide exemplary allegations of infringement sufficient information to survive a motion to dismiss under a notice

pleading standard,[2] but not a full disclosure of the infringement issues Blackberry intended to raise before the Court.

Similarly, Blackberry's Amended Complaint repeats the allegations in the Complaint relating to the 13 claims discussed above, and further asserts infringement of 15 claims of U.S. Patent Nos. 7,969,924 ("the '924 Patent"), 8,483,060 ("the '060 Patent"), 8,06,118 ("the '118 Patent"), 8,472,567 ("the '567 Patent"), 8,265,034 ("the '034 Patent"), 8,625,506 ("the '506 Patent"), 7,933,355 ("the '355 Patent"), 7,050,413 ("the '413 Patent").  Specifically, the Amended Complaint reiterates the allegations of the Complaint (*see* D.E. #16, at 66-196), and further alleges as follows:

- BLU's products "satisfy each and every element of one or more of the claims '924 patent, ***including without limitation, claims 1 and 23.***" *Id.*, at ¶ 201 (emphasis added).

- BLU's products "satisfy each and every element of one or more of the claims '060 patent, ***including without limitation, claims 1 and 14.***" *Id.*, at ¶ 224 (emphasis added).

- BLU's products "satisfy each and every element of one or more of the claims '118 patent, ***including without limitation, claims 1 and 11.***" *Id.*, at ¶245 (emphasis added).

- BLU's products "satisfy each and every element of one or more of the claims '567 patent, ***including without limitation, claims 11 and 16.***" *Id.*, at ¶ 265 (emphasis added).

- BLU's products "satisfy each and every element of one or more of the claims '034 patent, ***including without limitation, claims 1 and 20.***" *Id.*, at ¶ 287 (emphasis added).

- BLU's products "satisfy each and every element of one or more of the claims '506 patent, ***including without limitation, claims 1 and 9.***" *Id.*, at ¶ 308 (emphasis added).

- BLU's products "satisfy each and every element of one or more of the claims '355 patent, ***including without limitation, claim 1.***" *Id.*, at ¶ 329 (emphasis added).

---

[2] BLU notes that its motion to dismiss the claims not asserted in the Complaint remains pending.

- BLU's products "satisfy each and every element of one or more of the claims '413 patent, *including without limitation, claims 1 and 4.*" *Id.*, at ¶ 343 (emphasis added).

The Amended Complaint further dedicates approximately 37 pages of cursory analysis alleging infringement of these 15 claims, more than half of which comprises a mere recitation of the claims in dispute, images, and form paragraphs alleging infringement and claiming damages. *See, e.g. Id.*, at ¶¶ 197-202, 208, 214-225, 230, 235-246, 251, 156-266, 271, 276-288, 293, 298-309, 314, 319-330, 333-344, 348, and 352-357.  The exhibits to the Complaint merely provide copies of these seven patents (totaling over 277 pages), and an additional approximately 200 pages of publicly available documents that provide no infringement analysis.  Again, the Amended Complaint provides exemplary allegations of infringement in an effort to survive a motion to dismiss under a notice pleading standard, but *not* a full disclosure of the infringement issues Blackberry intended to raise before the Court.

In total, Blackberry provided less than 50 pages of cursory infringement analysis on 28 out of the 184 claims that it eventually asserted, leaving BLU with only three weeks to address the 156 previously undisclosed claims.  In comparison, Blackberry's infringement claim charts served in late December, after the deadline to amend pleadings, has almost 1000 pages of charts showing an analysis of Blackberry's infringement allegations, specifically referencing where Blackberry claims BLU's products allegedly meet each limitation in Blackberry's claims.

As the Court is aware, patents may have independent claims and dependent claims.  Each independent claim sets forth all the limitations, which must be found for a product to infringe or for prior art to invalidate same.  If a patent has multiple independent claims, each must include limitations not present in the other independent claims to avoid a double-patenting rejection. Additionally, each **dependent** claim adds additional limitations that were not present in the claims from which the dependent claim depends that must likewise be found for a product to

infringe or prior art to invalidate same. Accordingly, each claim stands on its own, and showing invalidity or infringement of one claim does not remove the burden of showing invalidity or infringement of other claims.

A chart comparing the volume of claim limitations disclosed against the volume of undisclosed claims limitations is attached hereto as Exhibit 1. Put another way, despite BLU's efforts – acknowledged by Blackberry – including hand-serving interrogatories on the first day of discovery to Blackberry requesting the identification of all claims in dispute, BLU was unable to obtain from Blackberry the identity of such claims until three weeks before Magistrate Judge O'Sullivan deadline for expert report and less than six weeks before the close of discovery. Running searches for these claims, and preparing competent expert reports within this time frame is impossible, as attested by experts Robert Zeidman and John Li. The declarations of these experts filed with BLU's motion [DE 93, Ex. 1, 2], demonstrate that it is simply impossible to perform and complete an analysis of the claims identified by Blackberry within the time provided by the current schedule.

 "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Ashmore v. Sec'y, Dep't of Transp.,* 503 Fed.Appx. 683, 685–86 (11th Cir. 2013) Here, despite BLU's diligence, it is not humanly possible to respond to meet the current schedule, including preparing invalidity expert reports in accordance with Rule 26 within 18 days of Blackberry's identification of 184 claims of 15 patents as being at issue. Accordingly, good cause exists to extend all pretrial deadlines in view of (1) Blackberry's refusal to identify the claims in dispute in this matter until December 23, 2016; (2) the impossibility of finding experts and preparing expert reports before the close of discovery on January 30, let

alone by the January 10, 2017 date set by Magistrate Judge O'Sullivan[3]; and (3) BLU's inability to obtain new counsel without first obtaining a continuance of the existing pretrial deadlines. Indeed, BLU should be provided with sufficient time to respond to the claims Blackberry identified in December 2016 and to secure new counsel to represent it in this action, rather than facing a default.[4] *See Florida Physicians Ins. Co. v. Ehlers,* 8 F.3d 780, 783 (11th Cir.1993) (defaults are disfavored based on the strong policy in favor of determining cases on their merits); *Informaiton Systems, and Networks Corp. v. U.S.*, 994 F.2d 792 (Fed. Cir. 1993) ("Our review is guided by the well-established principles that a trial on the merits is favored over default judgment and that close cases should be resolved in favor of the party seeking to set aside default judgment."); *Thermocycle Intern., Inc. v. A.F. Hinrichsen Sales Corp.*, 851 F.2d 339, 342 (Fed. Cir. 1988) ("default judgment, summarily imposed without opportunity for remedial action … was an abuse of the district court's discretion").

---

[3]    This Order is currently the subject of pending Objections.

[4]    When BLU realized the conflict with its counsel, it immediately retained replacement counsel.  Although BLU has conditionally secured new counsel, James A. Gale of Cozen O'Connor ("Cozen"), who is willing and capable of representing BLU in this matter, Cozen has advised that it cannot undertake this litigation under the current schedule.  BLU has not found any other competent counsel that can meet the current schedule and therefore would be willing to appear as trial counsel for BLU.  Moreover, Blackberry's suggestion that the undersigned counsel appear for BLU to handle this patent infringement suit is preposterous.  As pointed out, the undersigned does not have the background and experience to handle this type of lawsuit and has not previously and cannot currently handle this lawsuit.  His appearance in a prior lawsuit as co-defense counsel to monitor the progress of a suit on behalf of his client does not equate to litigating the patent suit as litigation counsel. Finally, the Court has already granted White and Case's withdrawal. As such, Blackberry's demand for disclosure of privileged communications between BLU and its predecessor counsel is irrelevant and a red herring to the instant issue.

For the reasons set forth above and in its Motion to Continue Pretrial Deadlines, Defendant, BLU Products, Inc., respectfully requests that the Court continue all pretrial deadlines for a minimum of six (6) months, and enter reasonable expert report and patent litigation related deadlines that comport with the requested six (6) month continuance.

Respectfully submitted,

Dated:     January 18, 2017

By: */s/ Bernard L. Egozi*
Bernard L. Egozi (Florida Bar No. 152544)
Egozi & Bennett, P.A.
2999 NE 191st Street, Suite 407
Aventura, FL  33180
Telephone: (305) 931-9342
Facsimile:  (305) 931-9343
Email:  begozi@egozilaw.com

*Counsel for BLU Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail through the CM/ECF system on this 18th day of January, 2017, on all counsel of record on the service list below.

Ching-Lee Fukuda (admitted *pro hac vice*)
Sidley Austin LLP
787 Seventh Avenue
New York, NY  10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email:  clfukuda@sidley.com

*Counsel for Plaintiff*

David T. Pritikin (admitted *pro hac vice*)
Douglas I. Lewis (admitted *pro hac vice*)
Scott R. Lassar (admitted *pro hac vice*)
Sidley Austin LLP
One S. Dearborn
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
Email:  dpritikin@sidley.com
Email:  dilewis@sidley.com
Email:  slassar@sidley.com

*Counsel for Plaintiff*

Thomas N. Tarnay (admitted *pro hac vice*)
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX  75201
Telephone:  (214) 981-3300
Facsimile:  (214) 981-3400
Email:  ttarnay@sidley.com

*Counsel for Plaintiff*

Marcos Daniel Jiminez
Audrey M. Pumariega
McDermott Will & Emery LLP
333 Avenue of the Americas, Suite 4500
Miami, FL  33131
Telephone:  (305) 358-3500
Facsimile:  (305) 347-6500
Email:  mjimenez@mwe.com
Email:  apumariega@mwe.com

*Counsel for Plaintiff*

*/s/* Bernard L. Egozi
Bernard L. Egozi

# EXHIBIT 1

## Disclosed Claims for U.S. Patent No. 8,489,868

1. A mobile device containing software instructions which when executed on the mobile device cause the mobile device to perform operations for controlling access to an application platform of the mobile device, the operations comprising: storing a plurality of application programming interfaces (APIs) at the mobile device, wherein at least one API comprises a sensitive API to which access is restricted; receiving, at the mobile device, an indication that a software application on the mobile device is requesting access to the sensitive API stored at the mobile device; determining, at the mobile device, whether the software application is signed, wherein a signed software application includes a digital signature generated using a private key of a private key-public key pair, wherein the private key is not accessible to the mobile device; the mobile device using a public key of the private key-public key pair to verify the digital signature of the software application; and based upon verifying the digital signature at the mobile device, the mobile device allowing the software application access to the sensitive API.

76. A method for controlling access to an application platform of a mobile device, comprising: storing a plurality of application programming interfaces (APIs) at the mobile device, wherein at least one API comprises a sensitive API to which access is restricted; receiving, at the mobile device, an indication that a software application on the mobile device is requesting access to the sensitive API stored at the mobile device; determining, at the mobile device, whether the software application is signed, wherein a signed software application includes a digital signature generated using a private key of a private key-public key pair, wherein the private key is not accessible to the mobile device; mobile device using a public key of the private key-public key pair to verify of the digital signature of the software application; and based upon verifying the digital signature at the mobile device, the mobile device allowing the software application access to the sensitive API.

## Disclosed Claims for U.S. Patent No. 8,713,466

1. A method for displaying preview information, the method comprising: displaying on a display dynamic preview information in a dynamic bar, the dynamic preview information being determined from information managed by a software application, the dynamic preview information being updated to reflect a change to the information managed by the software application; and expanding the dynamic bar to display an expanded dynamic bar in response to a first input, displaying the expanded dynamic bar comprising: displaying additional dynamic preview information determined from the information managed by the software application, the additional dynamic preview information being different from the dynamic preview information displayed in the dynamic bar; the additional dynamic preview information comprising a selectable link which when activated, invokes the software application.

14. A device for displaying preview information, the device comprising: a display; a processor configured for: displaying, on the display, dynamic preview information in a dynamic bar, the dynamic preview information being determined from information managed by a software application, the dynamic preview information being updated to reflect a change to the information managed by the software application; and expanding the dynamic bar to display an expanded dynamic bar in response to a first input, displaying the expanded dynamic bar comprising: displaying additional dynamic preview information determined from the information

managed by the software application, the additional dynamic preview information being different from the dynamic preview information displayed in the dynamic bar; the additional dynamic preview information comprising a selectable link which when activated, invokes the software application.

## Disclosed Claims for U.S. Patent No. 8,402,384

1. A method for controlling an apparatus comprising a display, the method comprising: displaying a dynamic bar on the display; displaying dynamic preview information in the dynamic bar, the dynamic preview information being determined from information managed by a software application, the dynamic preview information being updated to reflect a change to the information managed by the software application; expanding the dynamic bar to display an expanded dynamic bar in response to a first input from an input device, displaying the expanded dynamic bar comprising: displaying additional dynamic preview information determined from the information managed by the software application, the additional dynamic preview information being different from the dynamic preview information displayed in the dynamic bar, and the additional dynamic preview information being updated to reflect the same or different change to the information managed by the software application; displaying a selectable link embedded in the additional dynamic preview information to invoke the software application; and activating the software application in response to a second input invoking the link.

4. The method of claim 1, wherein the apparatus comprises a cellular telephone.

## Disclosed Claims for U.S. Patent No. 8,411,845

1. A method of displaying a communications log on a mobile device, the method comprising: detecting an outgoing phone call associated with a phone number; detecting an incoming phone call associated with the phone number; storing in a memory communications-related information for the incoming phone call; storing in the memory communications-related information for the outgoing phone call; displaying an entry in the communications log associated with one of the outgoing phone call and the incoming phone call; and displaying at least part of a listing when the entry is selected, the listing comprising communications-related information stored in the memory associated with the phone number including the outgoing phone call and the incoming phone call associated with the phone number.

16. A mobile device comprising: a processor; an input apparatus coupled to the processor; and a memory coupled to the processor, the memory storing instructions executable by the processor, the instructions being adapted to: detect an outgoing phone call associated with a phone number; detect an incoming phone call associated with the phone number; store in the memory communications-related information for the outgoing phone call; display an entry in the communications log associated with one of the outgoing phone call and the incoming phone call; and display at least part of a listing when the entry is selected, the listing comprising communications-related information stored in the memory associated with the phone number including the outgoing phone call and the incoming phone call associated with the phone number.

## Disclosed Claims for U.S. Patent No. 6,271,605

9. A device comprising: (a) a battery for providing power; (b) a load for using power provided by said battery; (c) a switch coupled between said battery and said load and having a first and a second state, said switch being operative to connect said battery to said load when in said second state, said switch also being operative to disconnect said battery from said load when in said first state wherein the load is not provided with power when said switch is in the first state; and (d) a switch controller coupled to said switch, said switch controller having an input for receiving a first signal from a first source and a second signal from a second source, said switch controller being operative to cause said switch to enter said second state in response to said first signal wherein the first signal provides an indication that an external power source has been coupled to the device, said switch controller also being operative to cause said switch to enter said first state in response to said second signal.

25. A method for controlling the operating environment of a rechargeable battery in an electronic device having a load and wherein the rechargeable battery is the direct source of power to the load, comprising the steps of: (a) providing a switch in the device that is operative to electrically couple the load to the rechargeable battery when in a second state, the switch also being operative to electrically decouple the load from the rechargeable battery when in a first state; (b) charging the rechargeable battery; (c) placing said switch in the first state thereby electrically disconnecting the rechargeable battery from the load after the rechargeable battery has been at least partially charged so the load does not drain the battery after the battery has been charged; (d) electrically coupling an external power source to the device; (e) detecting the coupling of said external power source to the device; and (f) placing said switch in the second state whereby the rechargeable battery is electrically connected to the load in response to detecting the coupling of said external power source to the device.

## Disclosed Claims for U.S. Patent No. 8,745,149

1. A method of displaying an instant messaging conversation on a display of an electronic device, the method comprising: displaying a conversation of instant messages; displaying a first time information for an instant message in the conversation in response to a first input; and automatically changing the first time information for the instant message to a second time information as time progresses and displaying the second time information instead of the first time information.

9. An electronic device for displaying an instant messaging conversation, the electronic device comprising: a display; a memory; and a processor electronically coupled with the display and the memory, the processor configured to: display a conversation of instant messages; display a first time information for an instant message in the conversation in response to a first input; and automatically change the first time information for the instant message to a second time information as time progresses and display the second time information instead of the first time information.

## Disclosed Claims for U.S. Patent No. 8,169,449

1. A system for compositing images using a multilayer graphics controller having an ability to show an image in a masked region based on a masking criterion, the system comprising: a first application defining one or more images for display using a layer of the multilayer graphics controller, the first application further defining a masked display region using masking criterion; and a second application providing an image to a further layer of the multilayer graphics controller for display in the masked display region; wherein the multilayer graphics controller does not combine the one or more images of the first application with the image of the second application.

## Disclosed Claims for U.S. Patent No. 7,969,924

1. A method comprising: reading a system information message received from a network; determining, at a user equipment, if the system information message includes an inhibit transition indication; determining, at the user equipment, if no further data is expected; and if the system information message includes an inhibit transition indication, and if no further data is expected: transmitting an indication message from the user equipment to the network, the indication message including a cause.

23. A user equipment comprising: a processor configured to: read a system information message received from a network; determine if the system information message includes an inhibit transition indication; determine if no further data is expected; and if the system information message includes an inhibit transition indication, and if no further data is expected; transmit an indication message from the user equipment to the network, the indication message including a cause.

## Disclosed Claims for U.S. Patent No. 8,483,060

1. A method for a communication terminal communicating with a network entity using a plurality of transport channels, the method comprising: receiving for each of said transport channels a first parameter relating to a rate matching ratio for the transport channel; receiving data with a rate determined by a rate matching process; and determining a variation between a number of bits of each of said transport channels before and after the rate matching process based on a second parameter indicating a maximum physical rate corresponding to a transport channel composite and at least one of the received first parameters.

14. A communication terminal for communicating using a plurality of transport channels, the communication terminal comprising: a receiver configured to receive for each of said transport channels a first parameter relating to a rate matching ratio for the transport channel and receive data with a rate determined by a rate matching process, and said communication terminal configured to: determine a variation between a number of bits of each of said transport channels before and after the rate matching process based on a second parameter indicating a maximum physical rate corresponding to a transport channel composite and at least one of the received first parameters.

## Disclosed Claims for U.S. Patent No. 8,406,118

1. A method of receiving pilot symbols in Orthogonal Frequency Division Multiplexing (OFDM) frames at an OFDM receiver having at least one receiving antenna from an OFDM base station having at least two transmitting antennas, the OFDM base station having an adjacent OFDM base station having at least two transmitting antennas, the OFDM frames having a time domain and a frequency domain, each OFDM frame comprising a plurality of OFDM symbols in the time domain and a plurality of subcarriers in the frequency domain, the method comprising: receiving scattered pilot symbols in a scattered pattern in time-frequency from each transmitting antenna of the OFDM base station, wherein the scattered pattern is offset from a scattered pattern of the adjacent OFDM base station.

11. A user equipment (UE) of a wireless network, the wireless network including a first Orthogonal Frequency Division Multiplexing (OFDM) base station having at least two transmitting antennas, the OFDM base station adjacent to a second OFDM base station having at least two transmitting antennas, the UE comprising: a receiving antenna; and a receiver configured to: receive scattered pilot symbols in a scattered pattern in time-frequency for each transmitting antenna of the first OFDM base station, wherein the scattered pattern from the first OFDM base station is offset from a scattered pattern of the second OFDM base station; and receive the scattered pilot symbols in OFDM frames from the first OFDM base station, the OFDM frames having a time domain and a frequency domain, each OFDM frame having a plurality of OFDM symbols in the time domain and a plurality of subcarriers in the frequency domain.

## Disclosed Claims for U.S. Patent No. 8,472,567

11. A method for use with Long Term Evolution (LTE) broadcast channel data, the method comprising: receiving at least a portion of the LTE broadcast channel data from a transmitter; descrambling the at least a portion of the LTE broadcast channel data using a descrambling sequence one of a plurality of unique descrambling sequences; and determining the number of transmit antennas used by the transmitter based on the unique descrambling sequence used to descramble the at least a portion of the LTE broadcast channel data, wherein receiving at least a portion of broadcast channel data comprises receiving the at least a portion of broadcast channel data within a primary broadcast channel in accordance with a Long Term Evolution (LTE) standard.

16. A communications device for receiving Long Term Evolution (LTE) broadcast channel data from a transmitter in a wireless network, the communications device configured to: receive at least a portion of the LTE broadcast channel data from a transmitter; descramble the at least a portion of LTE broadcast channel data using one of a plurality of unique descrambling sequences; and determine the number of transmit antennas used by the transmitter based on the unique descrambling sequence used to descramble the at least a portion of the LTE broadcast channel data, wherein the communications device is further configured to receive the at least a portion of broadcast channel data within a primary broadcast channel in accordance with a Long Term Evolution (LTE) standard.

### Disclosed Claims for U.S. Patent No. 8,265,034

1. A method comprising: responsive to an indication from an upper layer of a user equipment (UE) that no more data is expected, setting a cause in a signaling connection release indication message to UE Requested Packet Switched (PS) Data session end; transmitting, from the user equipment to a wireless network on a Dedicated Control CHannel (DCCH) using Acknowledged Mode (AM) Radio Link Control (RLC), the signaling connection release message including the cause for a network-controlled transition; and receiving a state transition message from the wireless network.

20. A user equipment (UE) having a radio subsystem, a processor adapted to interact with a memory, the radio subsystem, and a user interface, the UE configured to: responsive to an indication from an upper layer of the UE, set a cause in a signaling connection release indication message to UE Requested Packet Switched (PS) Data session end; transmit, to a wireless network on a Dedicated Control CHannel (DCCH) using Acknowledged Mode (AM) Radio Link Control (RLC), the signaling connection release indication message including the cause for a network-controlled transition; and receive a state transition message from the wireless network.

### Disclosed Claims for U.S. Patent No. 8,625,506

1. A user agent equipment for operation in an evolved packet system (EPS), the user agent equipment comprising: a non-access stratum (NAS) protocol layer configured to generate a NAS service request message comprising an EXTENDED SERVICE REQUEST and identifying a service type related to circuit-switched (CS) fallback; and an access stratum (AS) protocol layer configured to set a radio resource control (RRC) establishment cause (EC) of an RRC CONNECTION REQUEST message, the EC based upon the service type related to CS fallback identified by the NAS service request message, wherein when the service type is "mobile originating (MO) CS fallback", the RRC EC is set to "MO data".

9. A method in an evolved packet system (EPS), comprising: generating, in a non-access stratum (NAS) protocol layer, a NAS service request message comprising an EXTENDED SERVICE REQUEST and identifying a service type related to circuit-switched (CS) fallback; and setting, in an access stratum (AS) protocol layer, a radio resource control (RRC) establishment cause (EC) of an RRC CONNECTION REQUEST message, the EC based upon the service type related to CS fallback identified by the NAS service request message, wherein when a service type of "mobile originating (MO) CS fallback" is generated, setting the RRC EC to "MO data".

### Disclosed Claims for U.S. Patent No. 7,933,355

1. A device comprising: a training sequence repository containing at least one training sequence from a set of training sequences consisting of Training Sequence 0 1 1 0 0 0 1 0 0 0 1 0 0 1 0 0 1 0 1 1 1 1 0 1 0 0 1 1 0 1 0 1 0 0 0 0 0 1 0 1 1 0 0 0 1 0 0 1 0 1 1 0 1 1 1 1 0 1 1 1 0 0 0 1 1 1 0 1 0 0 1 1 1 1 0 1 0 0 1 0 0 0 0 0 1 0 0 1 1 0 1 0 0 0 0 1 0 0 0 0 1 1 0 1 0 0 0 0 1 0 0 0 1 0 1 1 1 0 0 1 1 1 0 1 1 1 1 0 1 0 1 1 1 1 1 0 1 1 1 0 0 0 0 1 1 1 0 1 1 1 0 1 1 0 0 0 1 1 1 1 0 1 0 0 0 0 0 1 1 1 0 1 1 1 1 1 0 1 0 0 1 1 1 1 0 0 1 1 0 1 1 0 1 1 1 0 1 0 1 1 1 1 0 0 1 0 1 0 0 1 and; a transmitter configured to transmit the at least one training sequence.

## <u>Disclosed Claims for U.S. Patent No. 7,050,413</u>

1. A mobile station configured to perform code division multiple access communication using a plurality of channelization codes, comprising: a receiver configured to receive a number of the channelization codes assigned to the mobile station, a modulation scheme for use in the code division multiple access, and an identification code corresponding to a transport block set size; and an identifier configured to identify the transport block set size based on the number of the channelization codes, the modulation scheme for use in the code division multiple access, and the identification code corresponding to the transport block set size, which are received.

4. An information communication method for performing code division multiple access communication between a base station and mobile stations using a plurality of channelization codes, comprising the steps of: receiving a number of the channelization codes assigned to a mobile station, a modulation scheme for use in the code division multiple access, and an identification code corresponding to a transport block set size; and identifying the transport block set size based on the number of the channelization codes, the modulation scheme for use in the code division multiple access, and the identification code corresponding to the transport block set size.

## Undisclosed Claims for U.S. Patent No. 8,489,868

13. The mobile device of claim 1, wherein the operations further comprise: displaying a description string when the software application attempts to access the sensitive API.

88. The method of claim 76, further comprising: displaying a description string when the software application attempts to access the sensitive API.

113. The mobile device of claim 1, wherein the sensitive API is associated with the public key.

137. The method of claim 76, wherein the sensitive API is associated with the public key.

## Undisclosed Claims for U.S. Patent No. 8,713,466

4. The method of claim 1, further comprising: contracting the expanded dynamic bar to display the dynamic bar in response to a cancel input.

6. The method of claim 1, wherein displaying the expanded dynamic bar comprises: displaying the additional dynamic preview information in an arrangement based on a context of the additional dynamic preview information or based on a function of the additional dynamic preview information.

7. The method of claim 1, further comprising: displaying, in the expanded dynamic bar, an interface element identifying a configuration option; and upon receipt of a configuration input, changing the configuration option.

8. The method of claim 7, wherein the interface element identifies a wireless networking function, and wherein changing the configuration option comprises turning the wireless networking function on or off.

9. The method of claim 7, further comprising updating the displayed interface element to reflect the changed configuration option.

12. The method of claim 1, further comprising: updating the additional dynamic preview information upon detecting a new event.

## Undisclosed Claims for U.S. Patent No. 8,402,384

2. The method of claim 1, further comprising displaying a status portion on the display.

3. The method of claim 2, wherein displaying the status portion comprises displaying signal strength.

5. The method of claim 1, further comprising, following activation of the software application, displaying a user interface for the software application.

6. The method of claim 1, further comprising displaying an application portion on the display, the application portion comprising at least one icon.

7. The method of claim 6, wherein, in response to a user input invoking the icon, the software application is activated.

8. The method of claim 1, wherein the software application is an email application, and wherein the dynamic preview information comprises a preview of a content of an email.

10. The method of claim 1, wherein the software application is a communications application, wherein the dynamic preview information is determined from information about one or more communications managed by the communications application, and wherein the additional dynamic preview information is also determined from the information about the one or more communications managed by the communications application.

12. The method of claim 1, wherein the expanded dynamic bar further comprises an icon representing the software application, and the additional dynamic preview information is displayed in association with the icon.

## Undisclosed Claims for U.S. Patent No. 8,411,845

2. The method of claim 1, wherein the listing comprises at least one of the most recent in time outgoing phone calls and incoming phone calls associated with the phone number stored in the memory.

3. The method of claim 1, further comprising displaying a menu of user options associated with the entry when the entry is selected.

4. The method of claim 3, the menu of user options comprising at least one of displaying the listing, sending a text message, accessing an address book application, and initiating a phone call.

5. The method of claim 4, wherein the at least part of the listing is displayed when the displaying the listing user option is selected.

6. The method of claim 4, further comprising creating a text message for a contact associated with the entry when the sending a text message user option is selected.

7. The method of claim 4, further comprising initiating a phone call to a contact associated with the entry when the initiating a phone call user option is selected.

8. The method of claim 1, the mobile device storing a plurality of names and associated phone numbers in the memory, the entry comprising one of a name associated with the phone number of the outgoing phone call and the incoming phone call, and the phone number associated with the outgoing phone call and the incoming phone call.

9. The method according to claim 1, the listing comprising at least one of a date and a time for the outgoing phone call and the incoming phone call.

10. The method according to claim 2, the listing further comprising the outgoing phone calls and the incoming phone calls in chronological order.

12. The method of claim 1, further comprising creating a text message for a contact associated with the entry when the entry is selected for text messaging.

13. The method of claim 1, further comprising: initiating a new outgoing phone call to the phone number when the entry is selected for calling.

14. The method of claim 1, further comprising: initiating a new outgoing phone call to the phone number when the entry is selected for calling; wherein the mobile device stores a plurality of names and associated phone numbers in the memory; wherein the entry comprises one of a name associated with the phone number of the outgoing phone call and the incoming phone call, and the phone number associated with the outgoing phone call and the incoming phone call; wherein the listing comprises at least one of the most recent in time outgoing phone calls and incoming phone calls associated with the phone number stored in the memory; and wherein the listing comprises at least one of a date and a time for the outgoing phone call and the incoming phone call.

15. The method of claim 1, further comprising: creating a text message for a contact associated with the entry when the entry is selected for text messaging; wherein the mobile device stores a plurality of names and associated phone numbers in the memory; and wherein the entry comprises one of a name associated with the phone number of the outgoing phone call and the incoming phone call, and the phone number associated with the one of outgoing phone call and incoming phone call.

17. The mobile device of claim 16, wherein the listing comprising at least one of the most recent in time outgoing phone calls and incoming phone calls associated with the phone number stored in the memory.

18. The mobile device of claim 16, further adapted to display a menu of user options associated with the entry when the entry is selected.

19. The mobile device of claim 18, wherein the menu of user options comprises at least one of displaying the listing, sending a text message, accessing the address book application, and initiating a phone call.

20. The mobile device of claim 19, wherein the at least part of the listing is displayed when the displaying the listing user option is selected.

21. The mobile device of claim 19, further adapted to create a text message for a contact associated with the entry when the sending a text message user option is selected.

22. The mobile device of claim 15, further adapted to store a plurality of names and associated phone numbers in the memory, the entry comprising one of a name associated with the phone number of the outgoing phone call and the incoming phone call, and the phone number associated with the outgoing phone call and the incoming phone call.

23. The mobile device of claim 15, the listing comprising at least one of a date and a time for the outgoing phone call and the incoming phone call.

24. The mobile device of claim 16, the listing further comprising the outgoing phone calls and the incoming phone calls in chronological order.

26. The mobile device of claim 15, further adapted to create a text message for a contact associated with the entry when the entry is selected for text messaging.

27. The mobile device of claim 15, further adapted to: initiate a new outgoing phone call to the phone number when the entry is selected for calling.

28. The mobile device of claim 15, further adapted to: initiate a new outgoing phone call to the phone number when the entry is selected for calling; wherein the mobile device stores a plurality of names and associated phone numbers in the memory; wherein the entry comprises one of a name associated with the phone number of the outgoing phone call and the incoming phone call, and the phone number associated with the outgoing phone call and the incoming phone call; wherein the listing comprises at least one of the recent in time outgoing phone calls and incoming phone calls associated with the phone number stored in the memory; and wherein the listing comprises at least one of a date and a time for the outgoing phone call and the incoming phone call.

29. The mobile device of claim 15, further adapted to: create a text message for a contact associated with the entry when the entry is selected for text messaging; wherein the mobile device stores a plurality of names and associated phone numbers in the memory; and wherein the entry comprises one of a name associated with the phone number of the outgoing phone call and the incoming phone call, and the phone number associated with the one of outgoing phone call and incoming phone call.

30. A method of displaying a communications log on a mobile device, the method comprising: displaying an entry in the communications log associated with one of an outgoing phone call associated with a phone number and an incoming phone call associated with the phone number; and displaying at least part of a listing when the entry is selected, the listing comprising communications-related information stored in a memory associated with the phone number including the outgoing phone call and the incoming phone call associated with the phone number.

## **Undisclosed Claims for U.S. Patent No. 6,271,605**

11. The device according to claim 9 wherein the external power source is an AC power source.

14. The device according to claim 9 wherein said switch comprises a MOSFET device.

19. The device according to claim 9 wherein the device is a cellular phone.

21. The device according to claim 9 wherein said battery is a rechargeable battery.

22. The device according to claim 21 further comprising a charger that is coupled to said rechargeable battery when said switch is in said second state and that is not coupled to said rechargeable battery when said switch is in said first state, said charger being operative to direct energy to said rechargeable battery.

26. The method of claim 25 wherein the step of placing said switch in a state that electrically disconnects the rechargeable battery from the load takes place in response to the occurrence of at least one condition of a set of pre-defined conditions.

31. The method of claim 25 wherein said condition is the appearance of a user inputted signal.

32. The method of claim 25 further comprising the step of providing the electronic device.

33. The method of claim 32 wherein said electronic device is a wireless communications device.

34. The method of claim 33 wherein said wireless communications device includes an antenna and communications circuitry.

## Undisclosed Claims for U.S. Patent No. 8,745,149

2. The method of claim 1, wherein the first time information comprises an absolute time.

3. The method of claim 2, wherein the second time information further comprises additional information.

4. The method of claim 3, wherein the additional information comprises an indication of a day on which the instant message was sent.

5. The method of claim 1, wherein at least one of the first time information and the second time information comprises a relative time.

6. The method of claim 5, wherein the second time information comprises an absolute time after expiration of a predetermined duration of time.

7. The method of claim 1, wherein the first time information is displayed for only a predetermined duration of time.

8. The method of claim 1, wherein the first comprises detecting a pointing device in proximity to the instant message.

10. The electronic device of claim 9, wherein the first time information comprises an absolute time.

11. The electronic device of claim 10, wherein the second time information further comprises additional information.

12. The electronic device of claim 11, wherein the additional information comprises an indication of a day on which the instant message was sent.

13. The electronic device of claim 9, wherein at least one of the first time information and the second time information comprises a relative time.

14. The electronic device of claim 13, wherein the second time information comprises an absolute time after expiration of a predetermined duration of time.

15. The electronic device of claim 9, wherein the first time information is displayed for only a predetermined duration of time.

16. The electronic device of claim 9, wherein the first input comprises detecting a pointing device in proximity to the instant message.

17. A non-transitory computer readable medium comprising computer executable instructions embedded thereon for execution by a processor of an electronic device such that, when executed, cause the processor to: display a conversation of instant messages; display a first time information for an instant message in the conversation in response to a first input; and automatically change the first time information for the instant message to a second time information as time progresses and display the second time information instead of the first time information.

**<u>Undisclosed Claims for U.S. Patent No. 8,169,449</u>**

3. The system of claim 1, where the second application comprises a web-based video player.

5. The system of claim 1, where the image provided by the second application comprises streaming video.

6. The system of claim 1, where the image provided by the second application comprises streamed Internet content.

10. A system comprising: a processor; a display; a multilayer graphics controller adapted to control the display, where the multilayer graphics controller comprises an ability to show an image in a masked region of the display based on a masking criterion; a first application executable by the processor to define one or more movie clip based controls for display on the display using a layer of the multilayer graphics controller, where the first application further defines a masked region on the display using the masking criterion; and a second application executable by the processor to provide an image for display in the masked region of the display using a further layer of the multilayer graphics controller; wherein the multilayer graphics controller does not combine the one or more movie clip based controls defined by first application with the image provided by the second application.

11. The system of claim 10, where the masked region comprises a movie clip.

14. The system of claim 10, where the image provided by the second application comprises streaming video.

15. The system of claim 10, where the image provided by the second application comprises streamed Internet content, and where the one or more clip based controls comprises at least one control facilitating user interaction with the Internet.

19. A non-transitory computer-readable storage medium storing: first application code executable to define one or more movie clip based controls for display using a layer of a multilayer graphics controller, where the first application is further executable to define a masked region on the layer using a masking criterion recognized by the multilayer graphics

controller; and second application code executable to provide an image to a further layer of the multilayer graphics controller for display in the masked region; wherein the one or more movie clip controls defined by the first application code is not combined with the image provide by the second application code.

23. A method for compositing images using a multilayer graphics controller having an ability to show an image in a masked region based on a masking criterion, the system comprising: using a first application to define one or more movie clip based controls for display using a layer of a multilayer graphics controller; using the first application to define a movie clip based masked region on a layer of the multilayer graphics controller using masking criterion; and using a second application to provide an image to a further layer of the multilayer graphics controller for display in the masked region, wherein the image provided by the second application is displayed in the masked region without combining the image provided by the second application with the movie clip based controls defined by the first application.

### Undisclosed Claims for U.S. Patent No. 7,969,924

11. The method of claim 1, wherein the inhibit transition indication is a T3xx inhibit timer value included in information element "UE timers and constants in connected mode" of a system information block type 1 of the system information message.

13. The method of claim 1, wherein the cause is set to UE Requested PS Data session end.

24. The user equipment of claim 23, wherein the inhibit transition indication is an inhibit timer value.

25. The user equipment of claim 24, further configured to store the inhibit timer value if the system information message includes the inhibit timer value.

26. The user equipment of claim 25, further configured to use the stored inhibit timer value for an inhibit timer.

27. The user equipment of claim 26, wherein the transmitting occurs if the inhibit timer is not running.

30. The user equipment of claim 24, wherein the inhibit timer value is a T3xx inhibit timer value.

33. The user equipment of claim 23, wherein the inhibit transition indication is a T3xx inhibit timer value included in information element "UE timers and constants in connected mode" of a system information block type 1 of the system information message.

35. The user equipment of claim 23, wherein the cause is set to UE Requested PS Data session end.

36. The user equipment of claim 23, wherein the act of transmitting the indication message comprises the user equipment transmitting a signaling connection release indication message on DCCH using AM RLC.

## Undisclosed Claims for U.S. Patent No. 8,483,060

2. The method of claim 1, wherein each first parameter represents a rate matching attribute for the corresponding transport channel.

3. The method of claim 2, wherein determining a variation comprises basing the variation on a third parameter, the third parameter based on a maximum of a plurality of fourth parameters, each fourth parameter based on a sum of calculations for each of said transport channels, wherein each calculation is a product of the rate matching attribute for one of said transport channels and the number of bits before rate matching for the one of said transport channels.

5. The method of claim 3, wherein the rate matching ratio is based on the rate matching attribute of each of said transport channels, the maximum physical rate corresponding to a transport channel composite and the third parameter.

6. The method of claim 2, wherein at least one rate matching attribute is received using Radio Resource Control (RRC) signaling.

15. The communication terminal of claim 14, wherein each first parameter represents a rate matching attribute for the corresponding transport channel.

16. The communication terminal of claim 15, wherein the variation is determined based on a third parameter, the third parameter based on a maximum of a plurality of fourth parameters, each fourth parameter based on a sum of calculations for each of said transport channels, wherein each calculation is a product of the rate matching attribute for one of said transport channels and the number of bits before rate matching for the one of said transport channels.

18. The communication terminal of claim 16, wherein the rate matching ratio is based on the rate matching attribute of each of said transport channels, the maximum physical rate corresponding to a transport channel composite and the third parameter.

19. The communication terminal of claim 15, wherein at least one rate matching attribute is received using Radio Resource Control (RRC) signaling.

## Undisclosed Claims for U.S. Patent No. 8,406,118

2. The method according to claim 1, further comprising for each transmitting antenna using the pilot symbols of the received OFDM frames to estimate a channel response for each point in the scattered pattern.

3. The method according to claim 2, further comprising for each transmitting antenna estimating the channel response of a plurality of points not on the scattered pattern by performing interpolation of channel responses determined for points in the scattered pattern.

4. The method according to claim 3, further comprising for each transmitting antenna combination performing an interpolation in a frequency direction to estimate the channel responses corresponding to remaining OFDM sub-carriers within each OFDM symbol.

5. The method according to claim 1, wherein the scattered pattern in time-frequency includes a first plurality of pilot symbols, each pilot symbol of the first plurality of pilot symbols spaced six subcarriers apart.

6. The method according to claim 5, wherein the scattered pattern in time-frequency includes a second plurality of pilot symbols, each pilot symbol of the second plurality of pilot symbols spaced six subcarriers apart, the second plurality of pilot symbols offset from the first plurality of pilot symbols by three subcarriers.

7. The method according to claim 6, wherein the second plurality of pilot symbols is offset in time from the first plurality of pilot symbols.

8. The method according to claim 1, wherein each scattered pattern of the OFDM base station and the adjacent OFDM base station is a diagonal-shaped lattice.

9. The method according to claim 1, wherein each scattered pattern of the OFDM base station and the adjacent OFDM base station is a diamond-shaped lattice.

10. The method according to claim 2, wherein the OFDM receiver has at least two receiving antennas and estimating a channel response includes estimating a channel response for each transmitting antenna, receiving antenna combination.

12. The UE according to claim 11, further comprising for each transmitting antenna using the pilot symbols of the received OFDM frames to estimate a channel response for each point in the scattered pattern.

13. The UE according to claim 12, further comprising for each transmitting antenna estimating the channel response of a plurality of points not on the scattered pattern by performing interpolation of channel responses determined for points in the scattered pattern.

14. The UE according to claim 13, further comprising for each transmitting antenna combination performing an interpolation in a frequency direction to estimate the channel responses corresponding to remaining OFDM sub-carriers within each OFDM symbol.

15. The UE according to claim 11, wherein the scattered pattern in time-frequency includes a first plurality of pilot symbols, each pilot symbol of the first plurality of pilot symbols spaced six subcarriers apart.

16. The UE according to claim 15, wherein the scattered pattern in time-frequency includes a second plurality of pilot symbols, each pilot symbol of the second plurality of pilot symbols spaced six subcarriers apart, the second plurality of pilot symbols offset from the first plurality of pilot symbols by three subcarriers.

17. The UE according to claim 16, wherein the second plurality of pilot symbols is offset in time from the first plurality of pilot symbols.

18. The UE according to claim 11, wherein each scattered pattern of the OFDM base station and the adjacent OFDM base station is a diagonal-shaped lattice.

19. The UE according to claim 11, wherein each scattered pattern of the OFDM base station and the adjacent OFDM base station is a diamond-shaped lattice.

20. The UE according to claim 12, wherein the ofdm receiver has at least two receiving antennas and estimating a channel response includes estimating a channel response for each transmitting antenna, receiving antenna combination.

### Undisclosed Claims for U.S. Patent No. 8,472,567,

1. A method comprising: receiving from a transmitter a plurality of scrambled bits within a data frame; descrambling the plurality of scrambled bits to produce broadcast channel data, wherein descrambling the plurality of scrambled bits uses a selected one of a plurality of unique pre-determined scrambling sequences, each unique pre-determined scrambling sequence corresponding to a number of transmit antennas used by the transmitter; and determining the number of transmit antennas used by the transmitter according to the selected unique pre-determined scrambling sequence used to descramble the plurality of scrambled bits, wherein receiving the plurality of scrambled bits comprises receiving the plurality of scrambled bits within a primary broadcast channel in accordance with a Long Term Evolution (LTE) standard.

2. The method of claim 1, further comprising generating from the broadcast channel data transport data and cyclic redundancy check (CRC) data, wherein the CRC data is computed based on the transport data.

3. The method of claim 1, wherein the plurality of scrambled bits are received in a plurality of resource elements.

4. The method of claim 1, wherein the primary broadcast channel uses seventy-two subcarriers.

5. The method of claim 4, wherein a period of the primary broadcast channel is 40 milliseconds.

6. A communications device for communicating with a transmitter in a wireless network, the communications device configured to: receive from the transmitter a plurality of scrambled bits within a data frame; descramble the plurality of scrambled bits to produce broadcast channel data, wherein the communications device descrambles the plurality of scrambled bits using a selected one of a plurality of unique scrambling sequences, each unique scrambling sequence corresponding to a number of transmit antennas used by the transmitter; and determine the number of transmit antennas used by the transmitter according to the selected unique scrambling sequence used to descramble the plurality of scrambled bits, wherein the communications device receives the plurality of scrambled bits within a primary broadcast channel in accordance with a Long Term Evolution (LTE) standard.

7. The communications device of claim 6, wherein the communications device is further configured to generate from the broadcast channel data transport data and cyclic redundancy check (CRC) data, wherein the CRC data is computed based on the transport data.

8. The communications device of claim 6, wherein the plurality of scrambled bits are received in a plurality of resource elements.

9. The communications device of claim 6, wherein the primary broadcast channel uses seventy-two subcarriers.

10. The communications device of claim 9, wherein a period of the primary broadcast channel is 40 milliseconds.

12. The method of claim 11, wherein determining the number of transmit antennas comprises determining a first scrambling sequence used by the transmitter when the transmitter uses only one antenna and determining a second scrambling sequence used by the transmitter when the transmitter uses only two antennas, wherein the first and second scrambling sequences are different.

13. The method of claim 11, further comprising generating from the broadcast channel data transport data and cyclic redundancy check (CRC) data, wherein the CRC data is computed based on the transport data.

14. The method of claim 11, wherein the at least a portion of broadcast channel data are received in a plurality of resource elements.

15. The method of claim 11, wherein the primary broadcast channel uses seventy-two subcarriers.

17. The communications device of claim 16, wherein the communications device is configured to determine the number of transmit antennas by determining a first scrambling sequence used by the transmitter when the transmitter uses only one antenna and by determining a second scrambling sequence used by the transmitter when the transmitter uses only two antennas, wherein the first and second scrambling sequences are different.

18. The communications device of claim 16, wherein the communications device is further configured to generate from the broadcast channel data transport data and cyclic redundancy check (CRC) data, wherein the CRC data is computed based on the transport data.

19. The communications device of claim 16, wherein the at least a portion of broadcast channel data are received in a plurality of resource elements.

20. The communications device of claim 16, wherein the primary broadcast channel uses seventy-two subcarriers.

## **Undisclosed Claims for U.S. Patent No. 8,265,034**

4. The method of claim 1, further comprising: receiving at the UE a request to release or abort a signaling connection from an upper layer for a specific core network domain.

7. The method of claim 1, wherein the signaling connection release indication message is transmitted after a user equipment timer expires.

23. The UE of claim 20, further configured to: receive a request to release or abort a signaling connection from an upper layer for a specific core network domain.

27. The UE of claim 20, wherein the signaling connection release indication message is transmitted after a user equipment timer expires.

33. The UE of claim 20, further configured to transition from a first radio resource control (RRC) state to a battery efficient RRC state or mode in response to receiving the state transition message.

34. The UE of claim 33, wherein the first RRC state is one of a Cell Dedicated CHannel (CELL_DCH) state, a Cell Forward Access CHannel (CELL_FACH) state, a Cell Paging CHannel (CELL_PCH) state and a UTRAN Registration Area Paging CHannel (URA_PCH) state.

35. The UE of claim 33, wherein the battery efficient RRC state or mode is one of a Cell Forward Access CHannel (CELL_FACH) state, a Cell Paging CHannel (CELL_PCH) state, a UTRAN Registration Area Paging CHannel (URA_PCH) state and an idle mode.

36. The UE of claim 20, wherein the state transition message is a message to transition from a first radio resource control (RRC) state to a battery efficient RRC state or mode.

## Undisclosed Claims for U.S. Patent No. 8,625,506

2. The user agent equipment of claim 1 wherein when the service type is "mobile terminating (MT) CS fallback", the RRC EC is set to "MT access", "mobile originating (MO) signaling", or "MO data".

3. The user agent equipment of claim 1 wherein when the service type is "mobile originating (MO) CS fallback emergency call", the RRC EC is set to "emergency call".

10. The method of claim 9, wherein when a service type of "mobile terminating (MT) CS fallback" is generated, setting the RRC EC to "MT access", "mobile originating (MO) signaling", or "MO data".

11. The method of claim 9, wherein when a service type of "mobile originating (MO) CS fallback emergency call" is generated, setting the RRC EC to "emergency call."

## Undisclosed Claims for U.S. Patent No. 7,933,355

2. The device of claim 1, wherein the training sequence repository includes all of the training sequences from the set of training sequences.

3. The device of claim 1, wherein the training sequence repository includes at least one second training sequence from a second set of training sequences consisting of Training Sequence 0 0 1 0 0 1 0 1 1 1 0 0 0 0 1 0 0 0 1 0 0 1 0 1 1 1 0 0 1 0 1 1 0 1 1 1 0 1 1 1 0 0 0 1 0 1 1 0 1 1 1 0 1 0 0 0 0 1 1 1 0 1 1 1 0 1 1 0 1 0 1 0 0 0 0 1 1 1 0 0 1 0 0 0 1 1 1 1 0 1 1 0 1 0 0 0 1 0 0 0 1 1 1 1 0 0 0 0 1 1 0 1 0 1 1 1 0 0 1 0 0 0 0 0 0 1 1 0 1 0 1 1 0 1 0 1 0 1 1 0 1 0 0 0 1 0 0 0 1 1 0 1 0 1 0 1 0 0 1 1 1 1 1 1 0 1 1 0 0 0 1 0 1 0 0 1 1 1 1 1 1 1 1 0 1 1 1 1 0 0 0 1 0 0 1 0 1 1 1 0 1 1 1 1 0 0.

4. The device of claim 1, wherein each training sequence in the set of training sequences is associated with a training sequence code (TSC): TSC Training Sequence 0 0 1 1 0 0 0 1 0 0 0 1 0 0 1 0 0 1 1 1 1 0 1 0 1 1 1 1 0 1 0 1 1 1 1 0 1 0 0 1 1 0 1 1 1 0 1 1 1 0 0 0 0 1 2 0 1 0 0 0 0 0 1 0 1 1 0 0 0 1 1 1 0 1 1 1 0 1 1 0 0 3 0 0 1 0 1 1 0 1 1 1 0 1 1 1 0 0 1 1 1 1 0 1 0 0 0 0 4 0 1 1 1 0 1 0 0 1 1 1 1 0 1 0 0 1 1 1 0 1 1 1 1 1 0 5 0 1 0 0 0 0 0 1 0 0 1 1 0 1 0 1 0 0 1 1 1 1 0 0 1 1 6 0 0 0 1 0 0 0 0 1 1 0 1 1 1 0 1 0 1 7 0 1 0 0 0 1 0 1 1 1 0 0 1 1 1 1 1 1 0 0 1 0 1 0 0 1.

5. The device of claim 1, wherein the at least one training sequence was assigned to the device.

7. The device of claim 1, wherein the device is a mobile station.

8. The device of claim 7, wherein the mobile station is multi-user aware.

9. The device of claim 1, wherein the training sequence is transmitted on a timeslot for multiple users.

10. The device of claim 1, wherein the device comprises a receiver configured to use the at least one training sequence.

## Undisclosed Claims for U.S. Patent No. 7,050,413

2. The mobile station according to claim 1, wherein a number of types of the transport block set size to be identified is larger than the number of types of the transport block set size which can be identified using the identification code corresponding to the transport block set size only.

3. The mobile station according to claim 1 or claim 2, wherein the receiver is further configured to receive information data in which CRC is attached for each predetermined data amount, and the transport block set size is a size of the predetermined data amount.

5. The information communication method according to claim 4, wherein the number of types of the transport block set size to be identified is larger than the number of types of the transport block set size which can be identified using the identification code corresponding to the transport block set size only.

6. The information communication method according to claim 4 or claim 5, further comprising: receiving the information data in which CRC is attached for each predetermined data amount, wherein the transport block set size is a size of the predetermined data amount.