UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23535-CIV-MORENO

Hon. John J. O'Sullivan, Magistrate Judge

BLACKBERRY LTD.,

    Plaintiff,

v.

BLU PRODUCTS, INC.,

    Defendant.

This Stipulated Order Regarding the Format of Document Productions shall govern the parties in the above-captioned case (the "Litigation").

I.     **GENERAL PROVISIONS**

    **A.**     The parties will make reasonable efforts to prepare responsive and non-privileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to hard copy documents or electronically stored information ("ESI") which are to be produced in this Litigation.

    **B.**     **SECURITY.** Both parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media.

    **C.**     **CONFIDENTIALITY DESIGNATION.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the

filename of the native file.

**D.     FORMAT OF PRODUCTION.** Hard copy documents will be produced under the specifications outlined in Section III. Standard electronic files such as email, documents, spreadsheets, presentations, web pages, and PDFs will be produced under the specifications outlined in Section IV. The format of production of large oversized hard copy documents and non-standard electronic files will be discussed before production to determine acceptable production format.

**E.     PRODUCTION MEDIA.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of production media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

**II.    DATA PROCESSING**

**A.     KEYWORD SEARCHING.** To the extent that keyword or other methodologies are used to identify the universe of potentially responsive documents to be processed for review, the parties shall meet and confer to try to develop a mutually agreeable list of search terms and protocols prior to the production of documents. The search utilities employed must support the use of stemmed searches or wildcard searches, searching of compound nested files and

archived files, Boolean searches, and proximity searching.

**B.    CULLING/FILTERING.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, AVI, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

**C.    DEDUPLICATION.** A party will use its best efforts to produce only a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment

shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

**D.     SOURCE CODE.** This Stipulated Order does not govern the format for production of source code, which shall be made available for inspection and/or produced pursuant to the relevant provisions of the Protective Order.

### III.    PRODUCTION OF HARD COPY DOCUMENTS

**A.** Hard copy documents can be produced in hard copy, PDF, or in the electronic format described below in this section at the producing party's discretion.

**B.     TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as single page Group IV TIFFs, with at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

**C.     OCR TEXT FILES.** A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. OCR text shall be provided as a single multi-page text file for each document, and

the filename should match its respective TIFF filename. The text files will not contain the redacted portions of the documents.

**D.     METADATA FIELDS.** The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, and (e) CUSTODIAN.

**E.     DATABASE LOAD FILES/CROSS-REFERENCE FILES.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Relativity, Concordance, Summation). Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

**F.     BATES NUMBERING.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

**IV.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**A.     TIFFs.** Unless excepted below, single page Group IV TIFFs should be provided at a resolution of no less than 300 dots per inch (dpi). Each TIFF image file should be one page and named according to the unique Bates number, followed by the extension ".TIF". Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document

orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

**B.     TEXT FILES.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

**C.     METADATA FIELDS AND PROCESSING.** Each of the metadata and coding fields set forth in Appendix 1 that can reasonably be extracted shall be produced for that document. The parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot reasonably be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH; and (e) CUSTODIAN, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct; however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information. Parties may request other native files be produced as described in Section IV.I. below.

**D.     DATABASE LOAD FILES/CROSS-REFERENCE FILES.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Relativity, Concordance, Summation). Each TIFF in a production must be referenced in the

corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the database load file.

E.   **BATES NUMBERING.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

F.   **PRESENTATIONS.** The parties shall take reasonable efforts to process presentations (e.g., MS PowerPoint, Google Slides) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image.

G.   **NATIVE FILE PRODUCTIONS.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format. TIFF images of these files need not be produced unless redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A

TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

**H.** **REDACTION OF INFORMATION.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

**V.** **PROCESSING OF THIRD-PARTY DOCUMENTS**

**A.** A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulated Order with the subpoena and state that the parties to the Litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

**B.** The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party.

**C.** If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing party.

**D.** Nothing in this Stipulated Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

**VI.** **SOURCES**

**A.     INITIAL PRODUCTION.** The parties will separately agree on dates for the production of basic documentation about the patent(s)-in-suit and the accused instrumentalities.

**B.     CUSTODIAL PRODUCTION.** Thereafter, the parties shall meet and confer to try to develop a mutually acceptable list of custodians and search terms with which the parties will conduct electronic searches using such agreed search term lists of custodial documents. Each requesting party shall limit its request for custodial production to a total of five custodians per producing party, however, none of the named inventors of the patents-in-suit and none of the persons involved in the prosecution of the patents-in-suit shall count against this limit. The parties may jointly agree to modify this limit without the Court's leave. In the absence of such agreement, the requesting party may petition the Court for up to five additional custodians per producing party, upon a showing of a distinct need.

Search terms will be employed for the searching of custodial data. The total search terms will be narrowly tailored to particular issues and limited to five terms per custodian (or as otherwise modified by agreement by the Parties). The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus shall count as a separate search term unless they are variants of the same word. Use of narrowing

search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. The parties agree to meet and confer about narrowing any search terms that produce an unreasonably large number of hits. The parties will meet and confer in good faith if a party wishes to change the limits set forth in this paragraph, including providing the requesting party the option to request additional discovery if it agrees to bear all reasonable costs caused by such additional discovery.

**C.   SOURCES THAT WILL BE SEARCHED FOR RESPONSIVE DOCUMENTS.** The parties will search any electronic files or folders, or other parts of media, including any internal and external hard drives and other ESI venues (including, but not limited to, recordable optical media, media cards, thumb drives, non-volatile memory, floppy disks, work desktop and laptop computers, email servers, intranet servers, network shares, public data shares and/or database servers) for each identified Custodian that the Custodian reasonably anticipates may contain non-duplicative responsive documents.

Subject to considerations of proportionality under Federal Rule of Civil Procedure 26, the parties agree to search non-custodial sources of data, including databases, archives (to the extent such archives contain data that is no longer active or readily accessible via another source), or relevant portions thereof, to the extent the party reasonably anticipates the source may contain non-duplicative responsive documents. The parties agree to meet and confer to limit the scope of production from non-custodial sources if the search is unduly burdensome or is likely to be

unreasonably inefficient in identifying relevant documents. Specifically, the parties recognize that certain non-custodial sources of data, by their nature, may not effectively or reasonably be searched using electronic search strings, and the parties agree to notify each other of any such sources that contain non-duplicative responsive documents. The parties will then meet and confer to discuss the collection of responsive documents from such sources, including potentially using other effective collection methodologies.

**D.     SOURCES THAT WILL NOT BE SEARCHED FOR RESPONSIVE DOCUMENTS.** The following sources will not be searched under any circumstances, and as such need not be preserved: automated disaster recovery backup systems and/or disaster recovery backup tapes (this does not include archives which are included in Section 6.C. above); RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; server, system, or network logs; data remaining from systems no longer in use that is unintelligible on the systems in use; personal digital assistants; mobile devices; voicemail systems; and instant messaging logs. In addition, to the extent that custodial email are being collected and searched, the parties agree that only sent and received custodial emails will be searched and that, with respect to documents that automatically save, only the most recent version of such documents existing at the time of collection need be searched. Notwithstanding the foregoing, the parties agree that responsive documents that a Custodian indicates are stored on an archival storage medium that the Custodian can readily identify and locate, that

cannot be located in any other repository of information, and that can reasonably be searched, will be searched. In addition, nothing in this paragraph shall limit a receiving party's right to request from a producing party more information about the nature of and burden associated with obtaining documents from a particular source. The parties further recognize their obligations to preserve any potentially relevant sources of data, whether live or in archival form, for purposes of this Litigation.

## VII. PRIVILEGE

**A.** Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Disclosures among defendants' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure.

**B.** Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding. A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the

assertion of privilege or protection. In addition, information that contains privileged matter or attorney work product shall be immediately returned if notice of inadvertent production is provided.

C. Privileged communications regarding this litigation that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

D. Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

## VIII. MISCELLANEOUS PROVISIONS

A. **NO EFFECT ON COST SHIFTING.** Nothing in this Agreement shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI.

B. **TIMING.** Production of ESI shall commence on a rolling basis promptly after the parties finalize custodian and search term lists.

C. **MODIFICATION.** This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order Regarding the Production of Electronically Stored Information," and each modified Stipulated Order will supersede the previous Stipulated Order.

_____  1/19/17
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Judge Moreno
All counsel of record

## Appendix 1

**A. Production Components.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited metadata file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Relativity, Concordance).

**B. Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

**C. Metadata Load File** shall be delimited according to the following characters:
- Delimiter = D (ASCII:0020)
- Text-Qualifier = þ (ASCII:00254)

**D.** The following **Metadata Fields** shall appear in the metadata load file:

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT / TITLE | Subject line of email; Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc only) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc only) |
| NATIVELINK | Native File Link (Native Files only) |