**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-23535-civ-Moreno**
**Hon. John J. O'Sullivan, Magistrate Judge**

BLACKBERRY LIMITED,

               Plaintiff,

     vs.

BLU PRODUCTS, INC.,

               Defendant.

**PLAINTIFF BLACKBERRY LIMITED'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... iii

TABLE OF ABBREVIATIONS ................................................................................ vi

I.      INTRODUCTION .......................................................................................1

II.     STANDARD ESSENTIAL AND NON-STANDARD ESSENTIAL PATENTS-IN-SUIT ..................................................................................2

III.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT ........................................................3

IV.     BLU HAS FAILED TO OVERCOME THE PATENTS'-IN-SUIT PRESUMPTION OF VALIDITY ...........................................................................................4

        A.      Anticipation and Obviousness Must Be Proven with Clear and Convincing Evidence ...................................................................................4

        B.      Granted Patents Are Presumed to Be in Compliance with the Written Description and Definiteness Requirements .............................................6

        C.      Summary Judgment of No Invalidity Should Be Entered ..........................6

V.      BLU INFRINGES EACH ASSERTED CLAIM OF THE PATENTS-IN-SUIT ...........8

        A.      Direct and Indirect Infringement ...........................................................8

        B.      Summary Judgment on Direct Infringement Should Be Granted ...................9

                1.      BLU infringes each asserted claim of the non-standard essential patents ...........................................................................................9

                2.      BLU infringes each asserted claim of the standard essential patents .10

        C.      Summary Judgment Should Be Entered For Induced Infringement .............10

        D.      A Patent Owner Is Entitled to Enhanced Damages for Willful Infringement 11

        E.      Summary Judgment Should Be Entered for Willful Infringement Against BLU for All Patents-in-Suit ...............................................................12

VI.     BLACKBERRY IS ENTITLED TO DAMAGES AS A RESULT OF BLU'S PAST INFRINGEMENT .....................................................................................13

        A.      BlackBerry's Expert Calculated a Reasonable Royalty Rate for the Non-Standard Essential Patents .................................................................14

        B.      BlackBerry's Expert Calculated a Reasonable Royalty for the Standard Essential Patents, which Is Fair, Reasonable, and Nondiscriminatory ..........16

        C.      BlackBerry Is Entitled To Damages as a Result of BLU's Infringement .......16

VII.    BLACKBERRY IS ENTITLED TO AN INJUNCTION .......................................17

        A.      BlackBerry Has Suffered Irreparable Injury Due to BLU's Infringement ...17

        B.      Monetary Damages Are Inadequate to Compensate BlackBerry .................18

**C.**      **The Balance of Hardships Favors Granting an Injunction** ............................18

**D.**      **The Interest of the Public Favors Granting an Injunction** ............................19

**VIII.   CONCLUSION** ..................................................................................................**20**

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 3, 4

*Apple, Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed Cir. 2014) ................................................................................ 14

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
No. 14-cv-62369, --- F. Supp. 3d ---, 2016 WL 4249951 (S.D. Fla. July 27, 2016) ......... 12, 13

*Astra Zeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ................................................................................ 14

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 686 (Fed. Cir. 2008) .............................................................................. 8, 18

*Celotex Corp v. Catrett*,
477 U.S. 317 (1986) ................................................................................... 3, 4, 7, 8

*Creative Compounds, LLC v. Starmark Labs.*,
651 F.3d 1303 (Fed. Cir. 2011) ......................................................................... 4, 5, 8

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ............................................................................................. 17

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
424 F.3d 1276 (Fed. Cir. 2005) ................................................................................. 3

*Georgia-Pacific v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ......................................................................... 14

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
376 F.3d 1339 (Fed. Cir. 2004) ................................................................................ 5

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1, 17 (1966) .............................................................................................. 5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) ........................................................................................... 11

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
397 F. Supp. 2d 537 (D. Del. 2005) ......................................................................... 17

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831
(Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) .................................................... 9, 17, 19

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012) ............................................................................ 5, 7

*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012) ................................................................................ 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .................................................................... 14

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ............................ 8

*McGinley v. Franklin Sports, Inc.*,
  262 F.3d 1339 (Fed. Cir. 2001) ...................................................................... 5

*MercExchange L.L.C. v. eBay, Inc.*,
  500 F. Supp. 2d 556 (E.D. Va. 2007) .......................................................... 18

*Mytee Prod., Inc. v. Harris Research, Inc.*,
  439 F. App'x 882 (Fed. Cir. 2011) ...................................................... 6, 7, 17

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ................................................................................... 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ...................................................................... 14

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) .................................................................... 18

*Scott v. Harris*,
  550 U.S. 372 (2007) ....................................................................................... 3

*Shire LLC v. Amneal Pharm., LLC*,
  802 F.3d 1301 (Fed. Cir. 2015) ...................................................................... 4

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012) ...................................................................... 6

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ...................................................................... 8

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016) .................................................................... 12

**STATUTES**

35 U.S.C. § 102(a) ............................................................................................ 4

35 U.S.C. § 103 ................................................................................................. 5

35 U.S.C. § 112(a) ............................................................................................ 6

35 U.S.C. § 112(b) ............................................................................................ 6

35 U.S.C. § 271(a) ............................................................................................ 8

35 U.S.C. § 271(b) ............................................................................................ 8

35 U.S.C. § 282(a) ............................................................................................ 4

35 U.S.C. § 284 .............................................................................................. 11

**RULES**

FEDERAL RULE OF CIVIL PROCEDURE 56(a) ..................................................................................... 3

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| BlackBerry | BlackBerry Limited |
| BLU | BLU Products, Inc. |
| Fact ¶ __ | Refers to Plaintiff BlackBerry's Statement of Material Facts in Support of Its Motion for Summary Judgment |
| Patents-in-Suit | U.S. Patent Nos. 7,969,924; 8,483,060; 8,406,118; 8,472,567; 8,265,034; 8,625,506; 7,933,355; 7,050,413; 8,402,384; 8,745,149; 8,169,449; 8,411,845; 6,271,605; 8,489,868; and 8,713,466 |
| Asserted Claims | Claim terms for which BlackBerry has alleged infringement by BLU Products, Inc. *See* Infringement Index at Exhibit B for a complete list of asserted claims identified with their corresponding patents and applicable infringing BLU products. |
| Accused Products | BLU Products, Inc.'s mobile devices and tablet for which BlackBerry has alleged infringement. *See* Infringement Index at Exhibit B for a complete list of asserted claims identified with their corresponding patents and applicable infringing products. |
| Non-Standard Essential Patents or "Non-SEP(s)" | U.S. Patent Nos. 8,402,384; 8,745,149; 8,169,449; 8,411,845; 6,271,605; 8,489,868; and 8,713,466 |
| Standard Essential Patents or "SEP(s)" | U.S. Patent Nos. 7,969,924; 8,483,060; 8,406,118; 8,472,567; 8,265,034; 8,625,506; 7,933,355; 7,050,413 |
| 3GPP | Third Generation Partnership Project |
| Infringement Index | BlackBerry Limited's Infringement Index of Patents-in-Suit, Asserted Claims, and BLU's Infringing Products in Support of Motion for Summary Judgment, attached as Exhibit B |
| ____ Ex. _-_ | Refers to the Declaration of the named individual and exhibit and/or attachment thereto. *See* BlackBerry's Index of Exhibits in Support of its Motion for Summary Judgment for a full list of Exhibits and their corresponding abbreviations. |
| the '924 patent | U.S. Patent No. 7,969,924 |

| the '060 patent | U.S. Patent No. 8,483,060 |
|---|---|
| the '118 patent | U.S. Patent No. 8,406,118 |
| the '567 patent | U.S. Patent No. 8,472,567 |
| the '034 patent | U.S. Patent No. 8,265,034 |
| the '506 patent | U.S. Patent No. 8,625,506 |
| the '355 patent | U.S. Patent No. 7,933,355 |
| the '413 patent | U.S. Patent No. 7,050,413 |
| the '384 patent | U.S. Patent No. 8,402,384 |
| the '149 patent | U.S. Patent No. 8,745,149 |
| the '449 patent | U.S. Patent No. 8,169,449 |
| the '845 patent | U.S. Patent No. 8,411,845 |
| the '605 patent | U.S. Patent No. 6,271,605 |
| the '868 patent | U.S. Patent No. 8,489,868 |
| the '466 patent | U.S. Patent No. 8,713,466 |

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 56.1, Plaintiff BlackBerry Limited ("BlackBerry")[1] respectfully moves the Court for summary judgment on the issues of infringement and no invalidity of the Patents-in-Suit, damages related to Defendant BLU Products, Inc.'s ("BLU") infringement thereof, and request for an injunction.

In support of this Motion, BlackBerry is contemporaneously filing its Statement of Material Facts, as well as an Infringement Index listing all Patents-in-Suit, Asserted Claims, and infringing Accused Products.  The Infringement Index is attached as Exhibit B.

In support of its Motion for Summary Judgment, BlackBerry states as follows:

## I.    INTRODUCTION

The Court may dispense of every dispositive issue in this case on summary judgment because BLU has failed in all respects to prove its affirmative defenses and has not disputed BlackBerry's overwhelming evidence in support of its claims. The record established by BlackBerry leads to only one conclusion: BlackBerry has proven infringement by a preponderance of the evidence, which BLU has not disputed; BLU did not prove invalidity by clear and convincing evidence; and BLU has offered *no* evidence that BlackBerry's damages calculations are improper.  Summary judgment on infringement, no invalidity, and damages, is therefore proper.

Moreover, BlackBerry requests an injunction to prevent additional harm and foreclose BLU's inevitable disregard for BlackBerry's patent rights in the future. Prior to the filing of BlackBerry's original complaint, BLU refused to engage in any licensing negotiations. During the pendency of this litigation, BLU failed to exercise any diligence whatsoever—avoiding its

---

[1] The Table of Abbreviations is reattached as Exhibit A to BlackBerry's Exhibit Index, which is being filed separately.  Hereinafter, all references to "Exhibit X" refer to exhibits attached to BlackBerry's Exhibit Index.

obligations under the Federal Rules for discovery and ignoring all Court-ordered deadlines, while continuing to sell its infringing Accused Products. And should the Court award BLU a compulsory license, rather than issue an injunction, BLU has indicated that it will not meet its monetary obligations for such a license. BLU's dilatory tactics and apathy to BlackBerry's intellectual property rights weigh in favor of BlackBerry's requested relief, and and BLU must be enjoined.

For the foregoing reasons, BlackBerry respectfully requests the Court to grant all relief sought herein.

## II.  STANDARD ESSENTIAL AND NON-STANDARD ESSENTIAL PATENTS-IN-SUIT

BlackBerry has invested considerable resources into developing its patent portfolio. (DE 16 at ¶¶ 5-6.) A number of its patents were developed in conjunction with the 3GPP, as part of the mobile telecommunications standard-setting process. (*Id.* at ¶¶ 7-8.) These patents are commonly referred to as Standard Essential Patents because in order to comply with industry standards, one must practice the patent. (*Id.* at ¶¶ 32-34.) As part of this process, BlackBerry committed to license its Standard Essential Patents on fair, reasonable, and non-discriminatory terms, otherwise known as FRAND rates.[2] *Id.* at ¶¶ 32-39.)

BlackBerry has also devoted substantial resources to Non-Standard Essential Patents, which are unrelated to the standards-setting process described above. (*Id.* at ¶ 5.)  These patents cover a range of innovative features in mobile devices, relating to security, user interface, power management, and graphics. (*Id.*) In this case, BlackBerry has asserted both Standard Essential

---

[2]  For additional discussion of the standards-setting process, BlackBerry directs the Court to its Complaint at DE 16 ¶¶ 1-8, 28-39.

Patents and Non-Standard Essential Patents.  *See* Infringement Index.[3]

## III.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although the Court must view the facts in the light most favorable to the nonmoving party, it must do so only "if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing FED. R. CIV. P. 56(c)). A dispute is not genuine "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Moreover, for issues on which the moving party does not bear the burden of proof, e.g., invalidity, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 326 (1986).

Once the moving party makes its required showing, the burden of production shifts to the nonmoving party: "when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading," *Anderson*, 477 U.S. at 248, because "[a]ttorney argument is no substitute for evidence." *Enzo Biochem., Inc.*, 424 F.3d at 1284. Therefore, summary judgment should be granted "if the [nonmovant's]

---

[3]  An index of BLU's Accused Products identified by BlackBerry's technical experts as infringing with corresponding Claims and Patents are attached hereto at the Infringement Index (Exhibit B).

evidence is merely colorable, or is not significantly probative . . ." *Anderson*, 477 U.S. at 248

(citations omitted).

## IV.   BLU HAS FAILED TO OVERCOME THE PATENTS'-IN-SUIT PRESUMPTION OF VALIDITY

Patents are entitled to a presumption of validity, and the party asserting invalidity bears

the burden of proving otherwise by clear and convincing evidence. 35 U.S.C. § 282(a); *Creative*

*Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1309-10 (Fed. Cir. 2011). The presumption

of validity is accompanied by:

> [T]he deference that is due to a qualified government agency presumed to have
> properly done its job, which includes one or more examiners who are assumed to
> have some expertise in interpreting the references and to be familiar from their
> work with the level of skill in the art and whose duty it is to issue only valid
> patents.

*Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015). Failure to meet the

clear and convincing burden warrants summary judgment of no invalidity. *See Celotex Corp.*,

477 U.S. at 326.

### A.   Anticipation and Obviousness Must Be Proven with Clear and Convincing Evidence

A party asserting that a claim is invalid as anticipated must show by clear and convincing

evidence that a prior art disclosure teaches every element of the claim. 35 U.S.C. § 102(a); *e.g.*,

*K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1377 (Fed. Cir. 2012). However, "[c]onclusory

statements simply mentioning the alleged prior art patent, relying on the same prior art

considered by the PTO, and alleging invalidity fail to raise a genuine issue of material fact."

*Creative Compounds, LLC*, 651 F.3d at 1313. Summary judgment of no anticipation is

appropriate where, for example, the nonmoving party fails "to provide any testimony from one

skilled in the art identifying each claim element and explaining how each claim element is

disclosed in the prior art reference." *Id.*

A party asserting that a claim is invalid as obvious must establish by clear and convincing evidence that "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious" to a person of ordinary skill in the art at the time of invention. 35 U.S.C. § 103. While obviousness is a legal determination, it relies on several underlying factual inquiries: (1) the scope and content of the alleged prior art; (2) differences between the alleged prior art and the asserted claims; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). If the asserting party relies on the same prior art for an obviousness determination that was previously before the patent examiner, that party must overcome the deference owed to the examiner in addition to meeting its clear and convincing burden. *See Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004) (noting that the clear and convincing burden is "'especially difficult' when . . . the infringer attempts to rely on prior art that was before the patent examiner during prosecution.").

Moreover, when asserting obviousness based on a combination of prior art references, that party must show "that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012). "Whether a motivation to combine prior art references has been demonstrated is a question of fact." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001). Therefore, summary judgment of nonobviousness is appropriate when there has been no showing—and therefore, no genuine dispute—as to whether a person of ordinary skill would be motivated to combine the asserted prior art. *See Mytee Prod., Inc. v. Harris Research, Inc.*, 439 F. App'x 882, 886 (Fed. Cir. 2011) (affirming summary

judgment of nonobviousness when nonmoving party provided "nothing more than conclusory assertions, gross generalities, and unsupported assumptions made by counsel" and "failed to provide any reason why a person of ordinary skill would have been motivated to combine the references.").

### B.      Granted Patents Are Presumed to Be in Compliance with the Written Description and Definiteness Requirements

A patent specification must "contain a written description of the invention," 35 U.S.C. § 112(a), that "conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

Additionally, patent claims must be sufficiently definite: "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter" of the invention. 35 U.S.C. § 112(b). Claims meet this requirement when, "viewed in light of the specification and prosecution history, [they] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (recognizing that "absolute precision is unattainable").

### C.      Summary Judgment of No Invalidity Should Be Entered

BLU has fallen far short of meeting its burden of showing by clear and convincing evidence that any of the Patents-in-Suit are invalid as anticipated or obvious or that any Asserted Claim fails to meet the requirements of § 112. BLU has provided *no* expert opinions on invalidity. Fact ¶¶ 1, 5-9, 14. BLU had an obligation to respond to contention interrogatories that seek the basis, if any, for BLU's allegations of invalidity. In its responses, BLU did not dispute in any manner the validity of 11 of the 15 Patents-in-Suit. *Id.* ¶ 11. BLU's invalidity contentions for the remaining four Patents-in-Suit consist of mere attorney arguments and citation to prior art

– 6 –

passages, with *no* support from a person of ordinary skill at the time of the invention regarding how those passages are relevant or why the references ought to be combined. *Id*. ¶¶ 5–10, 23. This is insufficient as a matter of law. *Celotex Corp.*, 477 U.S. at 326; *see also Kinetic Concepts, Inc.*, 688 F.3d at 1360; *Mytee Prod., Inc.*, 439 F. App'x at 886. BLU simply has not met its burden to overturn the presumption of validity to which the Patents-in-Suit are entitled, and has not disputed the validity of 11 of the 15 patents.

BLU has not met its clear and convincing burden to prove the Patents-in-Suit obvious. BLU provided *no* evidence from a skilled artisan regarding: (1) the scope and content of the alleged prior art; (2) the similarities between the alleged prior art and the Asserted Claims; or (3) motivation to combine alleged prior art. *Id*. ¶¶ 1, 5–11. For the four of the Patents-in-Suit for which BLU did identify alleged prior art in response to BlackBerry's Interrogatory, BLU failed to articulate any reason why a skilled artisan would combine these references, much less whether a skilled artisan could do so with a modicum of success. *Id*. ¶ 5–10. BLU never identified *any* prior art against the remaining eleven patents, nor did it provide any other evidence, by expert testimony or otherwise, of their invalidity over the alleged prior art. *Id*. ¶ 1, 5–9, 11, 23.

Nor has BLU offered clear and convincing evidence that the Asserted Claims fail to comply with § 112. BLU has provided *absolutely no evidence* that a skilled artisan would find any Asserted Claim to be invalid for failure to meet the written description and definiteness requirements. Fact ¶ 1, 8–9, 14. On the other hand, BlackBerry's experts have opined at length regarding the Asserted Claims of the Patents-in-Suit, never raising any issue with their supportive descriptions or questioning claim scope. *Id*. ¶¶ 17–22. Because the record contains *no evidence* that Patents-in-Suit are invalid for failure to comply with § 112, summary judgment is warranted. *Celotex Corp.*, 477 U.S. at 326.

## V.       BLU INFRINGES EACH ASSERTED CLAIM OF THE PATENTS-IN-SUIT

### A.       Direct and Indirect Infringement

A party is strictly liable for direct patent infringement when, before the expiration of the

patent and without the patent owner's authority, it "makes, uses, offers to sell, or sells any

patented invention, within the United States or imports into the United States any patented

invention . . ." 35 U.S.C. § 271(a). The asserting party must prove infringement by a

preponderance of the evidence. *E.g.*, *Creative Compounds, LLC*, 651 F.3d at 1314. The

infringement analysis involves two steps: (1) determination of claim scope and meaning and (2)

a comparison of the properly construed claims to the accused product, system, or method.

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370

(1996). Whether an accused product or service directly infringes is a question of fact. *Teleflex,*

*Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

A party may also indirectly infringe a patent, for example, by actively inducing others to

infringe. 35 U.S.C. § 271(b). To succeed on a claim of induced infringement, "the patentee must

establish first that there has been direct infringement, and second that the alleged infringer

knowingly induced infringement and possess specific intent to encourage another's

infringement." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 686, 697 (Fed. Cir. 2008) (internal

quotation marks and citation omitted). "A patentee may prove direct infringement or inducement

of infringement by either direct or circumstantial evidence." *Id.* at 700. The provision of user

manuals instructing how to use a product in an infringing manner, for example, is evidence of

affirmative intent to induce infringement. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852

(Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (holding that the provision of instructions outlining

how to use the product in an infringing manner was substantial evidence that the infringer

"intended the product to be used in an infringing manner.").

### B.    Summary Judgment on Direct Infringement Should Be Granted

BlackBerry's evidence of BLU's direct infringement goes beyond a preponderance of the

evidence and stands undisputed by BLU. Fact ¶¶ 1, 15–24, 35, 41. BlackBerry served its

responses to infringement contention interrogatories in accordance with its obligations under the

Federal Rules. Notably, BLU's responses to noninfringement contention interrogatories do not

dispute in any manner the infringement of 11 of the 15 asserted patents. *Id*. ¶ 23. BLU's

contentions for the remaining four Patents-in-Suit consist of mere identification of one or more

elements in the asserted patents that it contends is not practiced by the Accused Products, with

*no* factual support based on documents, witness testimony, or expert opinion. *Id*. ¶¶ 1, 23–24.

BlackBerry's technical experts provided detailed analyses of each Asserted Claim, mapping each

element to BLU's Accused Products to demonstrate that BLU infringes the Patents-in-Suit. *Id*.

¶ 17–22, 35. BLU has not rebutted these experts, much less provided any evidence of its non-

infringement in any acceptable format, and has not raised any dispute with Blackberry's experts

or their conclusions on BLU's infringing conduct. *Id*. ¶¶ 1, 5–9, 15–24. There is no dispute as to

BLU's infringement, and summary judgment is therefore warranted.

### 1.    BLU infringes each asserted claim of the non-standard essential patents

BLU infringes each and every Asserted Claim of the Non-Standard Essential Patents by

making, using, offering to sell, and/or selling its infringing Accused Products.[4] Fact ¶¶ 15–17,

22, 35. Claim charts submitted by BlackBerry's technical expert Dr. John P. J. Kelly demonstrate

BLU's infringement of these claims by more than a preponderance of the evidence and are

---

[4] *See* Infringement Index at Exhibit B.

attached to the Declaration of Dr. Kelly as Exhibit C. BLU has not disputed any of the evidence underlying Dr. Kelly's opinions, nor has BLU disputed Dr. Kelly's analysis and conclusions of infringement. *Id.* ¶¶ 1, 23–24.   BlackBerry respectfully requests that the Court enter summary judgment of infringement for each Asserted Claim of the Non-Standard Essential Patents identified in the Infringement Index at Exhibit B.

 2. **BLU infringes each asserted claim of the standard essential patents**

BLU infringes each and every Asserted Claim of the Standard Essential Patents by making, using, offering to sell, and/or selling the Accused Products.[5] Fact ¶ 15–21, 35.  Claim charts submitted by BlackBerry's technical experts Dr. Michael D. Kotzin, Kevin J. Negus, Ph.D., and James Proctor, demonstrate BLU's infringement of these claims by more than a preponderance of the evidence and are attached to each experts' Declaration as Exhibits D, G, and H, respectively. BLU has not disputed any of the evidence underlying Mr. Proctor's, Dr. Negus', or Dr. Kotzin's opinions, nor has BLU disputed their analyses and conclusions of infringement. *Id.* ¶ 24. BlackBerry respectfully requests that the Court enter summary judgment of infringement for each Asserted Claim of the Standard Essential Patents identified in the Infringement Index at Exhibit B.

 C. **Summary Judgment Should Be Entered For Induced Infringement**

BLU's customers directly infringe each of the Asserted Claims when they use BLU's Accused Products in their usual manner, as demonstrated by BlackBerry's technical experts. *Id.* ¶¶ 15–23, 35.  BLU intentionally induces its customers' infringement by actively instructing them how to infringe with user manuals and advertising. *Id.* ¶¶ 36-37. BLU also induces infringement by intentionally selling its Accused Products to American and foreign distributors,

---

[5] *See supra* n.3.

knowing that the distributors will then import the Products into the United States. *Id.* ¶¶ 38-39. BLU has known of the existence of the Standard Essential Patents since at least November 21, 2015, when BlackBerry sent its first Notice Letter to BLU. *Id.* ¶ 25. Therefore, since at least November 21, 2015, BLU has knowingly induced its customers to infringe the Standard Essential Patents. *Id.* ¶¶ 17, 25–26, 36–39. And BLU has known of the Non-Standard Essential Patents since at least August 16, 2016 (the date of BlackBerry's original complaint, DE 1), yet continues to sell its Accused Products, thus continues to induce its customers' and distributors' infringement of the Non-SEPs. *Id.* ¶¶ 17, 25–27, 33, 36–39. BLU has not disputed any of BlackBerry's evidence of BLU's induced infringement. *Id.* ¶¶ 1, 23–24. Summary judgment of induced infringement for all the Patents-in-Suit is therefore appropriate.

### D.    A Patent Owner Is Entitled to Enhanced Damages for Willful Infringement

It is within a court's discretion to treble damages pursuant to 35 U.S.C. § 284 when a patentee establishes by a preponderance of the evidence that the accused infringer engaged in "egregious infringement behavior" that goes "beyond typical infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-35 (2016). "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. Indeed, "the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. An infringer's intent is "measured against the knowledge of the actor at the time of the challenged conduct." *Id.* Additional evidence to support an award of trebled damages may be derived from the nonexclusive *Read* factors:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated

the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-cv-62369, --- F. Supp. 3d ---, 2016 WL 4249951, at *4 (S.D. Fla. July 27, 2016) (citing *Read Corp. v. Portec Inc.*, 970 F.2d 816 (Fed. Cir. 1992)).

### E.    Summary Judgment Should Be Entered for Willful Infringement Against BLU for All Patents-in-Suit

BLU knew of the existence of the Standard Essential Patents and of its infringing activity as early as November 21, 2015. Fact ¶¶ 25–26. Since that date, BLU has deliberately disregarded its obligations related to BlackBerry's Standard Essential Patents. *Id.* ¶¶ 28–32. Following receipt of BlackBerry's Letter and prior to the date this lawsuit was commenced, BLU never obtained opinion from counsel regarding BlackBerry's infringement allegations, nor did it seek opinion of counsel regarding the validity of the Standard Essential Patents. *Id.* ¶¶ 31–32; *see WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016) (affirming willful infringement when infringer exhibited objective recklessness by providing an "obviousness defense [that] was a litigation-contrived, hindsight reconstruction."); *Arctic Cat Inc.*, 2016 WL 4249951, at *4 (finding willfulness where infringer knew of patents at issue, but did not obtain opinion of counsel prior to engaging in infringing conduct). It is telling that BLU, the market leader for unlocked phones in the U.S., failed to so much as inquire about BlackBerry's claims of infringement, but instead chose to rely on its foreign device manufacturers' *lack of concern* as to BLU's infringement and its CEO's—a layperson—*belief* regarding their invalidity. *Id.* ¶ 31. And since the date of BlackBerry's original complaint (August 16, 2016), BLU has been on notice of

the Non-Standard Essential Patents, yet BLU has continued to conduct itself in an indifferent and unconcerned manner with regard to its infringement liability. *Id.* ¶¶ 32–33.

BLU has shown its bad faith by continuing to infringe while simultaneously refusing to cooperate with BlackBerry in discovery or comply with the Court-ordered deadlines. Fact ¶ 4. As noted, BLU has not provided any substantive response to BlackBerry's Interrogatory on noninfringement, nor has it supplemented its responses thereto following service of BlackBerry's contentions or expert reports. *Id.* ¶¶ 1, 23. BLU refused to offer any expert opinion on noninfringement or invalidity unless the Court submitted to BLU's demands to modify the schedule. *Id.* ¶¶ 1, 4. And it is undisputed that BLU knew of the Standard Essential Patents, yet failed to exercise *any* diligence; BLU admitted receiving the Notice Letter and not obtaining advice of counsel, and its defenses for all Patents-in-Suit are lacking any supportive evidence of record. *Id.* ¶¶ 1, 5–11, 14, 23–25, 31; *see Arctic Cat Inc.*, 2016 WL 4249951, at *8. Yet while BLU has provided absolutely *no evidence* to support its defenses, it has continued to sell its infringing Accused Products and has made no effort to prevent further infringement.[6] Fact ¶¶ 17, 32; *see Arctic Cat Inc.*, 2016 WL 4249951, at *8. Therefore, the Court should enter summary judgment on willfulness and increase the damages to which BlackBerry is entitled.

## VI.   BLACKBERRY IS ENTITLED TO DAMAGES AS A RESULT OF BLU'S PAST INFRINGEMENT

If this Court holds that BLU infringed the patents-in-suit, then it *must* award "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made by the invention by the infringer." *Astra Zeneca AB v. Apotex Corp.*, 782 F.3d

---

[6] Prior to suit being filed, BlackBerry attempted to engage in licensing negotiations with BLU and sent a Nondisclosure Agreement ("NDA") to enable the negotiations to move forward. BlackBerry never received BLU's executed NDA. BLU now asserts that it signed the NDA, but blames its former now-withdrawn counsel for failing to send the executed NDA to BlackBerry. However, BLU has not produced any documentation to support this assertion.

1324, 1329–30 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284); *see also Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327–30 (Fed Cir. 2014), *overr'd in part*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). To determine a "reasonable royalty," courts often evaluate what "the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Such a "hypothetical negotiation" analysis can consider fifteen factors, which are set out in *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). In arriving at a royalty rate, the Federal Circuit also has advised courts that "a reasonable royalty may permissibly reflect '[t]he fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty'" and "consider the panoply of 'events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.'" *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010).

During discovery BlackBerry produced overwhelming evidence, including expert reports from two damages experts, that established a reasonable royalty based on the expected outcome of hypothetical negotiations for the SEP and non-SEP patents. By contrast, the record contains no evidence that rebuts or undermines BlackBerry's calculations, and BLU has not submitted alternative calculations of its own. Without such evidence, this Court should award damages in the amounts described below.

### A.      BlackBerry's Expert Calculated a Reasonable Royalty Rate for the Non-Standard Essential Patents

BlackBerry's non-SEP damages expert, Brian Napper, examined the record evidence and submitted two reports during discovery. In those reports and the attached affidavit, Napper discussed the *Georgia-Pacific* factors at length and calculates the royalty rate that would result from a hypothetical negotiation taking place in 2013.

For five of the non-SEP patents (the '384, '466, '845, '149, and '868 patents), which cover features associated with the user interface of the Accused Products, Napper relied on a consumer survey to calculate the royalty rate. Fact ¶ 43–44. The survey, as described in the expert report of Dr. David Stewart, asked nearly 1,000 consumers to determine the importance they ascribe to the patented features and what value they place on these features in deciding which Android device to purchase. *Id.* ¶ 43. From the results of Stewart's survey, Napper calculated the "upper bound" of a royalty that would result from a hypothetical negotiation taking place in 2013. *Id.* ¶¶ 43–44. After adjusting for the low average sale price of the Accused Products, Napper calculates the reasonable royalty per phone. *Id.* For the reasons described in his affidavit, Napper concludes that this upper bound would be the amount reached in a hypothetical negotiation and therefore is the royalty rate applicable here.

Napper calculated a reasonable royalty rate for the '449 patent using test results from BlackBerry's technical expert, Dr. Kelly. According to Dr. Kelly's tests, the '449 patent improves battery life. Fact ¶¶ 46–48. Because increased battery capacity has a known market value, Napper calculated the appropriate royalty as described in the attached affidavit. *Id.*

To calculate a royalty rate for the '605 patent, Napper relied on Dr. Kelly's identification of chips that lack the battery disconnect feature. *Id.* ¶ 50. Publically available information shows that the qualitative difference between chips with the '605 patent-functionality and one without that feature. *Id.* ¶ 51. Based on this differential, and accounting for other differences between chips that have a battery disconnect and those that do not, Napper calculated a range of reasonable royalties for the '605 patent was appropriate. *Id.* ¶ 51. Because of BLU's intransigence during discovery, this Court should award the highest possible royalty for the '605 patent. *Id.* ¶¶ 2, 4.

Based on these royalty rates and the number of infringing products that BLU sold in the U.S. since the relevant starting dates, Napper calculated a reasonable royalty to compensate BlackBerry for BLU's past infringements of the non-SEP patents.

### B. BlackBerry's Expert Calculated a Reasonable Royalty for the Standard Essential Patents, which Is Fair, Reasonable, and Nondiscriminatory

Like Mr. Napper, BlackBerry's SEP damages expert, Dr. Matthew R. Lynde, submitted two expert reports which analyzed the relevant *Georgia-Pacific* factors at length and calculated the appropriate royalty for the SEPs-in-suit using publically available patent pool data and the rates BlackBerry paid for comparable licenses.

Dr. Lynde then used the results of these two approaches to calculate the damages that BLU owes. According to his report, the appropriate royalty rate for the SEPs-in-suit is the median between the results of the patent pool analysis and comparable license approach.

### C. BlackBerry Is Entitled To Damages as a Result of BLU's Infringement

BLU has failed to produce *any* evidence that undermines these damages calculations. After BlackBerry served its opening damages reports on January 10, 2017, BLU did not serve any rebuttal reports—on damages or any other issue. Fact ¶ 1. Nor did BLU respond to properly served discovery requests that sought evidence bearing on damages. BlackBerry served an interrogatory that asked BLU to identify "the royalty base and rate that [it] contend[s] is appropriate in this case." *Id.* ¶ 58. BLU asserted several objections and refused to provide any information or evidence regarding the appropriate damages. *Id.* Similarly, BlackBerry requested "[a]ll documents that BLU contends are related to a determination of a reasonable royalty and/or the amount of damages adequate to compensate BlackBerry for BLU's infringement of the Patents-in-Suit." *Id.* This time, BLU agreed to produce non-privileged responsive documents in its possession, but other than the documents cited in the Lynde and Napper reports, BLU has

identified no documents or any facts that undermine or contradict the Lynde or Napper's conclusions. *Id*. Therefore, this Court should award BlackBerry damages in accordance with the expert reports.

## VII.   BLACKBERRY IS ENTITLED TO AN INJUNCTION

To establish that a permanent injunction is appropriate, the plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). A patent owner suffers irreparable harm, for example, when an infringer's conduct has caused loss of market share, revenues, and brand recognition. *i4i Ltd. P'ship*, 598 F.3d at 861. Although lost profits and decreased market shares are hallmarks of irreparable harm, the patentee need not show such evidence to establish that element. *Mytee Prod., Inc.*, 439 F. App'x at 887. In certain instances, monetary damages may be inappropriate compensation regardless of the patent owner's licensing practices or current commercial activity related to the patents. *eBay Inc.*, 547 U.S. at 391. Furthermore, it is within the public's interest to protect a patent's (and the patentee's) right to exclude, which is "premised on the desire to give inventors inducements to create as well as to reap the benefits of their labors." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 547 (D. Del. 2005). Therefore, "[g]ranting injunctive relief protects the value of the patent, and allows the public to garner the attendant benefits." *Id.*

### A.   BlackBerry Has Suffered Irreparable Injury Due to BLU's Infringement

BlackBerry has suffered substantial irreparable injury due to BLU's infringing conduct. When BlackBerry was attempting to negotiate a license with BLU, BLU's CEO represented that

BLU would be unable to satisfy any licensing obligations.  Fact ¶ 13. Moreover, if BLU is found

to infringe, BLU has not provided any assurances that it can satisfy a monetary judgment, thus

buttressing the irreparable harm to BlackBerry. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d

1142, 1152 (Fed. Cir. 2011) (reversing denial of permanent injunction where the district court

failed to consider evidence of the infringer's inability to satisfy a judgment, which weighed in

favor of irreparable harm).

### B.      Monetary Damages Are Inadequate to Compensate BlackBerry

An injunction is proper because monetary damages will not properly compensate

BlackBerry. The same reasons recited above related to the injuries suffered by BlackBerry as a

result of BLU's infringement also apply here. *See MercExchange L.L.C. v. eBay, Inc.*, 500 F.

Supp. 2d 556, 582 (E.D. Va. 2007) (stating that the factors that show no adequate remedy at law

"inevitably overlap[]" with those bearing on irreparable harm). For one, BLU likely will avoid a

monetary judgment by simply filing for bankruptcy, as it has threatened in the past.  Fact ¶ 13.

Second, BlackBerry's loss of market share and inevitable price erosion cannot be recouped by an

award of damages. *Id.* ¶ 42. These injuries are not easily quantifiable, tending to support the

propriety of an injunction.  *See Broadcom Corp.*, 543 F.3d at 703 ("[D]ifficulty in estimating

monetary damages reinforces the inadequacy of a remedy at law.")

### C.      The Balance of Hardship Favors Granting an Injunction

BLU will inevitably complain that it is a small family business that should not be made to

comply with an injunction. Fact ¶ 13. However, BLU's public statements do not paint the picture

of a "mom and pop shop" as BLU would so like. Rather, BLU posits itself as *the* "fastest

growing mobile phone manufacturer," that has seen 100% growth multiple years in a row. *Id.*

¶ 12. BLU's CEO recently purchased an *$11 million, 8,718 square foot home* in "[t]he wealthy

Golden Beach" area of Miami. *Id.* ¶ 12. And it is BLU's infringing conduct that allowed BLU to enjoy such great success. *Id.* ¶ 42. BLU should not be allowed "to continue infringing simply because it successfully exploited its infringement," while BlackBerry is left with no recourse. *i4i Ltd. P'ship*, 598 F.3d at 863.

### D.   The Interest of the Public Favors Granting an Injunction

It is within the public's interest to award a permanent injunction because protecting BlackBerry's patents, which were obtained through substantial investment in mobile telecommunications technology, provides incentives for further innovation.  (DE 16 ¶¶ 6, 19.) The public has benefitted tremendously from the creativity of BlackBerry and its inventors, who have dedicated significant efforts to develop the 3GPP Standards that allow a variety of mobile devices to operate seamlessly on 2G, 3G, 4G, and LTE networks. (*Id.* ¶¶ 2–4, 7–8.) BlackBerry implemented technologies in its products during the early stages of mobile telecommunications, such as those claimed by the Patents-in-Suit, that set the baseline on which the public now relies as the standard in the telecommunications field. (*Id.* ¶¶ 2-8, 19–25.) Therefore, it is in the public's interest to protect BlackBerry's innovation with an injunction.

## VIII.   CONCLUSION

BlackBerry respectfully requests the following relief:

(a)    summary judgment of no invalidity for the Patents-in Suit;

(b)    summary judgment of direct infringement for the Patents-in-Suit;

(c)    summary judgment of induced infringement for the Patents-in-Suit;

(d)    summary judgment of willful infringement for the Patents-in-Suit;

(e)    summary judgment on damages, awarding BlackBerry $4,120,908.00 for BLU's past infringement;

(f)    an award of including attorneys' fees and trebled damages; and

(g)    a permanent injunction preventing BLU from making, using, offering for sale, selling, and or/importing the Accused Products in the United States.

Dated: February 10, 2017

Ching-Lee Fukuda *(pro hac vice)*
clfukuda@sidley.com
Todd M. Simpson *(pro hac vice)*
tsimpson@sidley.com
Caroline Bercier *(pro hac vice)*
cbercier@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300 Telephone
(212) 839-5599 Facsimile

Thomas N. Tarnay *(pro hac vice)*
ttarnay@sidley.com
R. Seth Reich Jr. *(pro hac vice)*
seth.reich@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
(214) 981-3300 Telephone
(214) 981-3400 Facsimile

*Attorneys for Plaintiff BlackBerry Limited*

Respectfully submitted,

By: /s/ Marcos Daniel Jiménez
Marcos Daniel Jiménez (FBN 441503)
mjimenez@mwe.com
Audrey M. Pumariega (FBN 85206)
apumariega@mwe.com
MCDERMOTT WILL & EMERY LLP
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
(305) 358-3500 Telephone
(305) 347-6500 Facsimile

Scott R. Lassar *(pro hac vice)*
slassar@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000 Telephone
(312) 853-7036 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

CM/ECF on February 10, 2017, on the following counsel or parties of record:

Bernard L. Egozi
(Florida Bar No. 152544)
Egozi & Bennett, P.A.
2999 NE 191st Street, Suite 407
Aventura, Florida 33180
Telephone: (305) 931-9342
Facsimile: (305) 931-9343
Email: begozi@egozilaw.com

*Counsel of Record and Outside General Counsel*
*for Defendant BLU Products, Inc.*

/s/  Marcos Daniel Jiménez
Marcos Daniel Jiménez