**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-23535-Civ-Moreno
Hon. John J. O'Sullivan, Magistrate Judge

BLACKBERRY LIMITED,

       Plaintiff,

  vs.

BLU PRODUCTS, INC.,

       Defendant.

**PLAINTIFF BLACKBERRY LIMITED'S STATEMENT (REDACTED) OF
MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
| --- | --- |
| BlackBerry | BlackBerry Limited |
| BLU | BLU Products, Inc. |
| Fact ¶ __ | Refers to Plaintiff BlackBerry's Statement of Material Facts in Support of Its Motion for Summary Judgment |
| Patents-in-Suit | U.S. Patent Nos. 7,969,924; 8,483,060; 8,406,118; 8,472,567; 8,265,034; 8,625,506; 7,933,355; 7,050,413; 8,402,384; 8,745,149; 8,169,449; 8,411,845; 6,271,605; 8,489,868; and 8,713,466 |
| Asserted Claims | Claim terms for which BlackBerry has alleged infringement by BLU Products, Inc. *See* Infringement Index at Exhibit B for a complete list of asserted claims identified with their corresponding patents and applicable infringing BLU products. |
| Accused Products | BLU Products, Inc.'s mobile devices and tablet for which BlackBerry has alleged infringement. *See* Infringement Index at Exhibit B for a complete list of asserted claims identified with their corresponding patents and applicable infringing products. |
| Non-Standard Essential Patents or "Non-SEP(s)" | U.S. Patent Nos. 8,402,384; 8,745,149; 8,169,449; 8,411,845; 6,271,605; 8,489,868; and 8,713,466 |
| Standard Essential Patents or "SEP(s)" | U.S. Patent Nos. 7,969,924; 8,483,060; 8,406,118; 8,472,567; 8,265,034; 8,625,506; 7,933,355; 7,050,413 |
| 3GPP | Third Generation Partnership Project |
| Infringement Index | BlackBerry Limited's Infringement Index of Patents-in-Suit, Asserted Claims, and BLU's Infringing Products in Support of Motion for Summary Judgment, attached as Exhibit B |
| ____ Ex. _-_ | Refers to the Declaration of the named individual and exhibit and/or attachment thereto. *See* BlackBerry's Index of Exhibits in Support of its Motion for Summary Judgment for a full list of Exhibits and their corresponding abbreviations. |
| the '924 patent | U.S. Patent No. 7,969,924 |
| the '060 patent | U.S. Patent No. 8,483,060 |

| the '118 patent | U.S. Patent No. 8,406,118 |
| --- | --- |
| the '567 patent | U.S. Patent No. 8,472,567 |
| the '034 patent | U.S. Patent No. 8,265,034 |
| the '506 patent | U.S. Patent No. 8,625,506 |
| the '355 patent | U.S. Patent No. 7,933,355 |
| the '413 patent | U.S. Patent No. 7,050,413 |
| the '384 patent | U.S. Patent No. 8,402,384 |
| the '149 patent | U.S. Patent No. 8,745,149 |
| the '449 patent | U.S. Patent No. 8,169,449 |
| the '845 patent | U.S. Patent No. 8,411,845 |
| the '605 patent | U.S. Patent No. 6,271,605 |
| the '868 patent | U.S. Patent No. 8,489,868 |
| the '466 patent | U.S. Patent No. 8,713,466 |

Plaintiff BlackBerry Limited ("BlackBerry") hereby submits this Statement of Material Facts in Support of Its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 26 and Local Rule 56.1. BlackBerry contends that no genuine dispute as to a material fact exists to be tried, as set forth below:

1. BLU has not served any expert reports in this litigation. *See* DE 30, 73, 88, 89, 93; Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Lynde Ex. E ¶ 6; Napper Ex. F-2 at 26; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Stewart Ex. I ¶ 6; Tarnay Ex. J ¶¶ 2-3.

2. BlackBerry served its First Set of Requests for Admission on December 30, 2016, but BLU did not serve its responses 30 days after service. Tarnay Ex. J ¶¶ 5-6; J-1; J-2 at 28.

3. Only outside counsel of record Bernard Egozi from the law firm Egozi & Bennett signed BLU's responses to BlackBerry's first set of interrogatories. Tarnay Ex. J ¶ 8; J-3 at 36.

4. BLU has failed to respond on time and in full to the majority of BlackBerry's written discovery, obstructed BlackBerry's discovery efforts, and refused to comply with the Court's Orders regarding the schedule. DE 69, 71, 79, 88-90, 93-197, 101.

5. BLU has not provided any evidence from a person of ordinary skill in the art regarding the similarities or differences of the alleged prior art identified in response to BlackBerry's Interrogatory No. 5 as compared to the '149, '868, '466, and '384 patents. Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Tarnay Ex. J ¶¶ 2-3; Ex. J-3 at No. 5.

6. BLU has not provided any evidence supporting why a person of ordinary skill would be motivated to combine any of the references alleged to be prior art in response to BlackBerry's Interrogatory No. 5. Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Tarnay Ex. J ¶¶ 2-3; Ex. J-3 at No. 5.

7. BLU has not provided any evidence to support whether a person of ordinary skill would have any expectation of success in combining the references identified in response to BlackBerry's Interrogatory No. 5 to achieve the claimed inventions. Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Tarnay Ex. J ¶¶ 2-3; Ex. J-3 at No. 5.

8. A person of ordinary skill in the art at the time of the invention of the Patents-in-Suit would have the qualifications set forth below:

| Patent-in-Suit | Qualifications of a Skilled Artisan | Support |
|---|---|---|
| '605 patent | Bachelor's degree in electrical engineering, computer engineering, computer science, or a related field and two years of industry experience in the design and implementation of hardware and/or firmware for battery management or power circuitry (or an equivalent level of experience). | Kelly Ex. C-1 ¶ 36. |
| '868 patent | Bachelor's degree in computer engineering, computer science, or a related field and two years of industry experience with designing and/or implementing cryptographic software (or an equivalent level of experience) | Kelly Ex. C-1 ¶ 37. |
| '449 patent | Bachelor's degree in computer engineering, computer science, or a related field and two years of industry experience with computer graphics and graphics software | Kelly Ex. C-1 ¶ 38. |
| '384, '466, '845 and '149 patents | Bachelor's degree in computer engineering, computer science, or a related field as well as two years of industry experience developing graphical applications (or an equivalent level of industry experience) | Kelly Ex. C-1 ¶ 39. |
| '924 and '034 patents | Bachelor's degree in computer science, computer engineering, electrical engineering, or related field and 3-5 years of experience in telecommunications, or a master's degree with 2-4 years of experience in telecommunications | Proctor Ex. H-1 ¶ 41. |
| '060 and '506 patents | Bachelor's degree in electrical engineering, computer science, or the equivalent, and at least three years of experience in the design of wireless communications products | Negus Ex. G-1 ¶ 44. |
| '118, '355, '413, '567 patents | Bachelor of Science degree in Electrical Engineering, and either (a) have completed at least one year of graduate course work in communication systems or (b) have at least five years of engineering experience working in cellular wireless communication systems | Kotzin Ex. D-1 ¶ 50, Ex. D-2 ¶ 49, Ex. D-3 ¶ 51, Ex. D-4 ¶ 50. |

9. None of BLU's witnesses that were offered for deposition (Juse Echtey, Michael Ohev-Zion, and Samuel Ohev-Zion) have the qualifications of a person of ordinary skill in the art at the time of invention. Tarnay Ex. J-4 at 19:1-23:7; Ex. J-5 at 80:14-82:21 (Vol. 2); Ex. J-6 at 5:24-8:4.

10. U.S. Patent Nos. 7,725,832[1] and 5,617,526 were before the patent examiner during prosecution of the '466 and '384 patents. Tarnay Ex. J-3 at No. 5; DE 16-8 and 16-9 at "References Cited." U.S. Patent Nos. 6,766,353, 6,188,995,[2] and 6,412,717[3] were before the patent examiner during prosecution of the '868 patent. Tarnay Ex. J-3 at No. 5; DE 16-7 at "References Cited." U.S. Patent No. 7,167,703[4] was before the patent examiner during prosecution of the '149 patent. Tarnay Ex. J-3 at No. 5; DE 16-12 at "References Cited."

11. BLU never identified any prior art against the '605, '449, '845, '149, '924, '034, '060, '506, '118, '355, '413, '567 patents. Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Tarnay Ex. J ¶¶ 2-4; Ex. J-3 at No. 5.

12. BLU's website states that it is the "fastest growing mobile phone manufacturer," Tarnay Ex. J-11 at 1, and interviews with BLU's CEO touted its 100% growth rate year after year as evidence of this success. Tarnay Ex. J-12 at 2. In fact, BLU's CEO was able to purchase an 8,718 square-foot beachfront mansion for $11 million in the "wealthy Golden Beach" in mid-2015. Tarnay Ex. J-8.

13. BLU has made conflicting representations about its financial position: in one instance BLU's CEO stated that BLU is near bankruptcy with surplus inventory piling up,

---

[1] The '384 patent file history cites EP App. No. 1265157, which claims priority to U.S. App. No. 10/063,296. U.S. Patent No. 7,725,832 is a continuation thereto.
[2] The '868 patent cites on its face WO 99/05600, which claims priority to U.S. App. No. 08/901776, which issued as U.S. Patent No. 6,188,995.
[3] U.S. Patent No. 5,412,717 is included in the examiner's International Search Report.
[4] U.S. Patent No. 7,167,703 is cited as U.S. Pub. No. 2003/0060240 on the face of the '149 patent.

– 3 –

Gnuschke Ex. K-1 at BBLTD_00222405, while BLU's COO later stated that it has never considered filing for bankruptcy and has never had a problem with surplus inventory. Tarnay Ex. J-4 at 48:4-11, 48:25-49:1, 51:11-22.

14. BLU has not provided any evidence from a person of ordinary skill to support the invalidity of the Asserted Claims for failing to comply with the written description and indefiniteness requirements. Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Tarnay Ex. J ¶¶ 2-3; Ex. J-3 at No. 5.

15. BLU sells the Accused Products to, and negotiates sales contracts with, its domestic and foreign distributors in the United States. Tarnay Ex. J-2 at Nos. 53-55; Ex. J-4 at 38:16-44:9, 51:4-52:14.

16. BLU sends its customers lists of its devices that are being offered for sale. Tarnay Ex. J-4 at 81:10-16.

17. BLU has made, used, offered to sell, sold, and/or imported the Accused Products in the United States in the past and continues to do so now. Kelly Ex. C-1 ¶ 134; Lynde Ex. E-1 ¶ 11; Napper Ex. F-1 at 7-8; Negus Ex. G-1 at 108-119; Proctor Ex. H-1 ¶ 189; Tarnay Ex. J-2 at Nos. 1-2; Ex. J-4 at 38:16-40:21, 58:4-59:5, 62:9-63:20, 65:5-20; Ex. J-6 at 34:6-37:1, 39:9-40:3, 40:24-41:3.

18. BlackBerry's Standard Essential Patents cover 3GPP mobile telecommunications standards that enable the operation of the 2G, 3G, 4G, and LTE Networks in the United States. Kotzin Ex. D-1 ¶ 64; Ex. D-2 ¶ 79; Ex. D-3 ¶ 70; Ex. D-4 ¶ 59-98; Ex. D-5 ¶ 4; Negus Ex. G-1 ¶ 97-156; Proctor Ex. H-1 ¶¶ 130-135, 148-149, 184-185.

19. In order to comply with the applicable 3GPP standards, mobile phones must practice the Standard Essential Patents. Kotzin Ex. D-1 ¶ 8-9, 58-90; Ex. D-2 ¶¶ 8-9, 50-92; Ex.

D-3 ¶¶ 8-10, 52-87; Ex. D-4 ¶¶ 8-9, 51-100; Ex. D-5 ¶ 4, 18; Negus Ex. G-1 ¶¶ 2, 82-156; Proctor Ex. H-1 ¶ 97-185, 188; Tarnay Ex. J-4 at 74:15-17.

20. BLU's Accused Products comply with 3GPP standards that correspond to the Standard Essential Patents. Kotzin Ex. D-1 ¶¶ 89-90, 108-382; Ex. D-2 ¶¶ 80, 91-103; Ex. D-3 ¶¶ 70-71, 86-219; Ex. D-4 ¶¶ 99-502; Negus Ex. G-1 ¶¶ 97-99, 275-374; Proctor Ex. H-1 ¶¶ 188, 190-352; Ex. H-2 ¶¶ 18; Tarnay Ex. J-2 at Nos. 3-51, 70-72; Ex. J-4 at 68:5-76:3.

21. BLU's Accused Products infringe each Asserted Claim of the Standard Essential Patents, as set forth in BlackBerry's Infringement Index. Kotzin Ex. D ¶ 5; Kotzin Ex. D-1 ¶¶ 8-9, 11, 108-382; Ex. D-2 ¶¶ 8-9, 93-184; Ex. D-3 ¶¶ 8-10, 12, 92-219; Ex. D-4 ¶¶ 8-9, 11, 119-520; Negus Ex. G ¶ 5; Ex. G-1 ¶ 28-29, 372-485; Proctor Ex. H ¶ 5; Ex. H-1 ¶ 46; Tarnay Ex. J-4 at 68:5-76:3.

22. BLU's Accused Products meet each and every limitation of the Asserted Claims of the Non-Standard Essential Patents, as set forth in BlackBerry's Infringement Index. Tarnay Ex. J-2 at Nos. 3-51, 70-72; J-3 at No. 4; Kelly Ex. C ¶ 5; Ex. C-1 ¶¶ 136-146.

23. BLU's response to BlackBerry's Interrogatory on BLU's noninfringement position does not cite any supportive evidence and is directed only to the '149, '868, '384, and '466 patents. Tarnay Ex. J-3 at No. 4. BLU never supplemented this response or provided a noninfringement position for the '605, '449, '845, '149, '924, '034, '060, '506, '118, '355, '413, '567 patents. Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 6; Lynde Ex. E ¶ 6; Napper Ex. F-2 at 26; Negus Ex. G ¶ 6; Proctor Ex. H ¶ 7; Stewart Ex. I ¶ 6; Tarnay Ex. J ¶ 2-4.

24. BLU never responded or otherwise objected to Dr. Kelly's, Dr. Kotzin's, Dr. Lynde's, Mr. Napper's, Dr. Negus', or Mr. Proctor's expert opinions or qualifications. *See* DE 88; Kelly Ex. C ¶ 6; Kotzin Ex. D ¶ 5; Lynde Ex. E ¶ 6; Napper Ex. F-2 at 26; Negus Ex. G ¶ 6;

Proctor Ex. H ¶ 7; Tarnay Ex. J ¶ 2-3.

25. BlackBerry sent its first Notice Letter to BLU Products, Inc. on November 21, 2015, which identified the SEPs-in-Suit. DE 16 ¶¶ 40-43; Tarnay Ex. J-2 at No. 64; Ex. J-4 at 24:12-21; Ex. J-9. BLU received the notice letter, but never responded. Tarnay Ex. J-4 at 26:21-27:6; Ex. J-10.

26. BlackBerry sent a follow-up letter to BLU on December 8, 2015, which BLU received, but to which it did not respond. DE 16 ¶¶ 44-45; Tarnay Ex. J-2 at No. 64; Ex. J-4 at 27:7-28:6; Ex. J-10.

27. BLU has known of the existence of the Standard Essential Patents since at least November 21, 2015. DE 16 ¶¶ 40-43; Tarnay Ex. J-2 at No. 64; Ex. J-4 at 27:14-28:6.

28. BLU refused to negotiate a license with BlackBerry after receiving BlackBerry's Notice Letters. Tarnay Ex. J-4 at 24:9-30:19; Gnuschke Ex. K-1 at BBLTD_222404.

29. Later, BlackBerry sent BLU a Nondisclosure Agreement ("NDA") on April 13, 2016 to facilitate licensing negotiations. Gnuschke Ex. K-1 at BBLTD_00222405. BLU never executed the NDA and continued to refuse to negotiate in its response. *Id*. at BBLTD_222404.

30. When BlackBerry's counsel asked, "Did you ever sign the non-disclosure agreement?" BLU's CEO testified, "I don't believe we did." Tarnay Ex. J-4 at 29:22-30:19.

31. BLU never investigated its infringement liability or the validity of the Standard Essential Patents after receiving BlackBerry's Notice Letters and prior to BlackBerry's Complaint being filed. Tarnay Ex. J-4 at 24:3-27:6; 79:15-80:9. Instead, BLU relied on its outside device manufacturers' lack of concern and unidentified "basic information" regarding BLU's potential infringement, in addition to its CEO's (a layperson) "belief" that the Standard Essential Patents were invalid. Tarnay Ex. J-4 at 25:17-26:12.

32. BLU has not taken any steps to avoid infringing the Patents-in-Suit. Tarnay Ex. J-4 at 80:11-20. BLU has never inquired of standards-setting bodies whether any patents cover the required standards. Tarnay Ex. J-4 at 82:3-10.

33. On August 16, 2016, BlackBerry filed a complaint alleging that BLU's products infringe the Non-SEPs. DE 1 at ¶¶ 28-158. Therefore, BLU has known of the existence of the Non-SEPs since at least August 16, 2016. *Id*.

34. On January 24, 2017, BLU's counsel forwarded a copy of the NDA, which bears the signature of BLU's COO Michael Ohev-Zion dated November 15, 2016. Tarnay Ex. J-7 at 3.

35. BLU's Accused Products infringe each Asserted Claim of the Patents-in-Suit when they are used in their usual manner. Kelly Ex. C-1 ¶¶ 135, 137, 139, 141, 143, 145; C-2 ¶¶ 7-12; Kotzin Ex. D-1 at ¶¶ 91-382; Ex. D-3 ¶ 149-219; Ex. D-4 ¶ 102-520; D-5 ¶¶ 4-5, 20, 9-11, 14-15, 18; Negus Ex. G-1 ¶¶ 30-31, 487-500; Proctor Ex. H-1 ¶¶ 189, 343-352; Ex. H-2 ¶¶ 16, 130.

36. BLU advertises that its products are 2G, 3G, 4G, and LTE compliant. Kotzin Ex. D-1 ¶¶ 95, 253; Kotzin Ex. D-3 ¶ 153; Ex. D-4 ¶¶ 106, 326; Negus Ex. G-1 ¶¶ 292, 307, 495, 497; Proctor Ex. H-1 ¶ 348; Tarnay Ex. J-2 at Nos. 65-66; Ex. J-4 at 74:15-75:10.

37. BLU provides manuals and/or guides to its customers that instruct them how to use the Accused Products on their respective 2G, 3G, 4G, and LTE networks, i.e., in their usual manner. Tarnay Ex. J-2 at No. 67; Kelly Ex. C-1 ¶¶ 137, 139, 141, 143, 145; Kotzin Ex. D-1 ¶ 92; Ex. D-2 ¶ 8, 91, 98, 121; Ex. D-3 ¶ 150; Ex. D-4 ¶ 103; Negus Ex. G-1 ¶ 494-499; Proctor Ex. H-1 ¶ 345-347.

38. BLU sells the Accused Products to United States distributors who take possession or title of the Accused Products abroad, but then import them into the United States. Tarnay Ex.

J-2 at Nos. 58-60; Ex. J-4 at 51:4-52:14, 54:18-56:7; Ex. J-5 at 97:16-100:8, Ex. J-6 at 34:6-37:1.

39. BLU sells Accused Products to foreign distributors who take possession or title of the Accused Products abroad, but then export them into the United States. Tarnay Ex. J-2 at No. 59; Ex. J-4 at 51:4-52:14, 54:18-56:7; Ex. J-6 at 34:6-37:1.

40. BLU deposits into United States bank accounts the proceeds of its sales to United States and Foreign Distributors. Tarnay Ex. J-2 at No. 60; Ex. J-6 at 34:6-36:9; 44:15-45:19.

41. BLU performs testing of the Accused Products at its Miami, Florida office, e.g., testing to confirm that its Accused Products work on U.S. telecommunications networks. Tarnay Ex. J-4 at 38:16-40:21.

42. BlackBerry has used the Patents-in-Suit in successful products, and therefore the Patents-in-Suit are commercially successful. Kelly Ex. C-1 at ¶¶ 148-155; Negus Ex. G-1 ¶ 221, 273; Proctor Ex. H-1 ¶¶ 353-54; Napper Ex. F-1 at Schedule 5. BLU's leading market share therefore is due to BLU's ongoing infringement of the Patents-in-Suit. Lynde Ex. E-1 ¶ 27; Napper Ex. F-1 at 10-11, 34.

43. Dr. David Stewart asked nearly 1,000 consumers to determine the importance they ascribe to the patented features and what value they place on these features in deciding which Android device to purchase. Stewart Ex. I-1 ¶¶ 18, 76. After adjusting for the fact that the average Accused Product has a lower purchase price than the average Android smartphone, the average diminution in price for the Surveyed Patents ('384/'466, '845, '149, and '868 patents) is:

| Feature/Patent(s) | Avg. Diminution in Price |
|---|---|
| '344/466 Patents | ■ |
| '845 Patent | ■ |
| '149 Patent | ■ |
| '868 Patent | ■ |

Napper Ex. F-2 at 16-19.

44. By multiplying the adjusted diminution in value, as shown above, by the average gross profit margin, one can arrive at an upper bound reasonable royalty rate for the Surveyed Patents. Napper Ex. F-2 at 26-27. Using this methodology, a reasonable royalty rate for the '384, '466, '845, '149, and '868 patents is ▮ per unit. *Id*.

45. BLU owes BlackBerry $2,080,880 in past damages for its infringement of the Surveyed Patents. Napper Ex. F at 9.

46. The C604905200T model battery, included in some Accused Products, has a capacity of 2000 milleampere and sells at a retail price of ▮. The C684804150T model battery, which is included in some Accused Products, has a capacity of 1500 mAh and sells at a retail price of ▮. As a result, it costs ▮ for an additional 500 mAh in capacity and a single mAh has a market value of ▮. Napper Ex. F-2 at 13-14, 30.

47. Use of the '449 patent results in at least a 2% improvement on battery discharge. Kelly Ex. C-2 ¶¶ 7-10, Napper Ex. F-2 at 13, 30.

48. A reasonable royalty rate for the '449 patent is between ▮ per unit. Napper Ex. F-2 at 13-14, 31.

49. BLU owes BlackBerry 115,437 in past damages for its infringement of the '449 patent Napper Ex. F at 8.

50. Certain TI chips, including BQ24155, BQ24157, and BQ24158, do not have a battery disconnect feature. Kelly Ex. C-2 at 3. The cost of these chips ranges is ▮ ▮ per unit respectively. Napper Ex. F-2 at 11-12. The chips in the Accused Products, like TI chip BQ24296 and BQ24192, have a battery disconnect feature, Kelly Ex. C-1 ¶ 136, and cost between ▮ per unit, Napper Ex. F-2 at 11-12. Therefore, the price differential

between chips with a battery disconnect feature and those without ranges from ▮ per unit. *Id*. at 12.

51. Publically available information shows that the qualitative difference between chips with the '605 patent-functionality and one without that feature. Napper Ex. F-2 at 12. Based on this differential, and accounting for BLU's intransigence during this litigation, an appropriate royalty rate is ▮. *See* Napper Ex. F at 9 & Ex. 6.

52. BLU owes BlackBerry $152,336 in past damages for its infringement of the '605 patent Napper Ex. F ¶ at 9 & Ex. 6.

53. Each of the SEPs-in-Suit are among the top 10% of SEPs that are actually essential to the standards of which they are a part. Lynde Ex. E-2 ¶¶ 7-12, 49.

54. A reasonable royalty rate for the SEPs-in-Suit is ▮ per unit. Lynde Ex. E-2 ¶¶ 13-56.

55. BLU owes BlackBerry $1,772,255 in past damages for its infringement of the SEPs-in-Suit. Lynde Ex. E ¶ 57 & Schedule 4.

56. BLU has derived revenue in the past from domestic sales of its Accused Products. Tarnay Ex. J-2 at No. 52.

57. BLU maintains bank accounts containing proceeds from sales of the Accused Products to foreign and domestic distributors in the United States. Tarnay Ex. J-2 at Nos. 60-61; Ex. J-6 at 34:19-37:1.

58. BLU did not identify a royalty base and rate that it contended was appropriate in this case or specifically identify relevant documents in response to BlackBerry's Interrogatory No. [1st 33,34] and Request for Production No. 24. Tarnay Ex. J-3 at No. 12; Ex. J-13 at No. 36.

| | |
|---|---|
| Dated: February 10, 2017 | Respectfully submitted, |
| | By: /s/ Marcos Daniel Jimenez |
| Ching-Lee Fukuda *(pro hac vice)* | Marcos Daniel Jiménez (FBN 441503) |
| clfukuda@sidley.com | mjimenez@mwe.com |
| Todd M. Simpson *(pro hac vice)* | Audrey M. Pumariega (FBN 85206) |
| tsimpson@sidley.com | apumariega@mwe.com |
| Caroline Bercier *(pro hac vice)* | MCDERMOTT WILL & EMERY LLP |
| cbercier@sidley.com | 333 SE 2nd Avenue, Suite 4500 |
| SIDLEY AUSTIN LLP | Miami, Florida 33131 |
| 787 Seventh Avenue | (305) 358-3500 Telephone |
| New York, New York 10019 | (305) 347-6500 Facsimile |
| (212) 839-5300 Telephone | |
| (212) 839-5599 Facsimile | Scott R. Lassar *(pro hac vice)* |
| | slassar@sidley.com |
| Thomas N. Tarnay *(pro hac vice)* | SIDLEY AUSTIN LLP |
| ttarnay@sidley.com | One South Dearborn |
| R. Seth Reich Jr. *(pro hac vice)* | Chicago, Illinois 60603 |
| seth.reich@sidley.com | (312) 853-7000 Telephone |
| SIDLEY AUSTIN LLP | (312) 853-7036 Facsimile |
| 2021 McKinney Avenue, Suite 2000 | |
| Dallas, Texas 75201 | |
| (214) 981-3300 Telephone | |
| (214) 981-3400 Facsimile | |

*Attorneys for Plaintiff BlackBerry Limited*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on February 10, 2017, on the following counsel or parties of record:

Bernard L. Egozi
(Florida Bar No. 152544)
Egozi & Bennett, P.A.
2999 NE 191st Street, Suite 407
Aventura, Florida 33180
Telephone: (305) 931-9342
Facsimile: (305) 931-9343
Email: begozi@egozilaw.com

*Counsel of Record and Outside General Counsel
for Defendant BLU Products, Inc.*

/s/  Marcos Daniel Jiménez
Marcos Daniel Jiménez