UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BLACKBERRY LIMITED,                          CASE NO. 1:16-23535-CIV-MORENO
                                             Magistrate Judge O'Sullivan
      Plaintiff,

vs.

BLU PRODUCTS, INC.

      Defendant.

_____/

**BLU PRODUCTS, INC.'S REPLY MEMORANDUM SUPPORTING THE
MOTION TO STAY LITIGATION
PENDING RESOLUTION OF *INTER PARTES* REVIEW**

Blu Products, Inc. ("BLU"), pursuant to Local Rule 7.1, respectfully submits this Reply Memorandum in support of its Motion to Stay Litigation Pending Resolution of *Inter Partes* Review.

**I.  Plaintiff's Own Conduct Undercuts Its Claim That It Will Suffer Prejudice If This Action Is Stayed Pending The IPR Proceedings.**

Plaintiff asserts, without basis, that it will be prejudiced if this action is stayed pending resolution of the IPR Proceedings involving the patents-in-suit in this action. However, not only has Plaintiff failed to make an adequate showing necessary to support a claim of prejudice, it has also admitted critical facts that contradict any claim of prejudice.

Plaintiff's only argument to support its purported prejudice in the event of a stay is the conclusory statement that a stay would "significantly harm and devalue [Plaintiff's] patent rights." However, "[d]elays based on statutory frameworks, such as those pursuant to IPR proceedings ... do not normally cause undue prejudice." *Audio MPEG, Inc. v. Hewlett-Packard Com.*, 2015 U.S. Dist. LEXIS 126014, at *8 (E.D. Va.). This is because "[a] stay will not diminish the monetary damages to which [Plaintiff] will be entitled if it succeeds in its infringement suit—it only delays

1

realization of those damages and delays any potential injunctive remedy." *VirtualAgility Inc. v. Salesforce.com,* 759 F.3d 1307, 1319 (Fed. Cir. 2014).

Plaintiff's reliance on *Davol, Inc. v. Atrium Med. Corp.,* 2013 WL 3013343, *2 (D. Del.) is without merit. There, the patent owner provided evidence that it and the accused infringer were direct competitors in a market with only one other participant. The court found that, aside from monetary damages, a stay would irreparably harm the patent owner in the form of loss of market share and price erosion. *Id.*; *see also VirtualAgility Inc.,* 759 F.3d at 1318-19 (finding that a two year delay resulting from a stay would not cause undue prejudice even between direct competitors because there would be no loss of monetary damages).

By contrast, Plaintiff has made no showing that it will suffer *any* irreparable harm in the form of a loss of market share, price erosion, lost witnesses, or otherwise. Unlike the industry in *Davol*, which involved only one other competitor, the smart phone industry has many competitors, with the vast majority of those being considerably larger than BLU and BlackBerry (e.g., Samsung, Apple, Huawei, etc.). *See* Figure 1 below.[1]

---

[1] Source: https://www.statista.com/statistics/271496/global-market-share-held-by-smartphone-vendors-since-4th-quarter-2009/.



**Figure 1**

It is worth noting in Figure 1 above that BlackBerry (RIM) fell off the chart as of the fourth calendar quarter of 2012, almost five full years ago. Far from being an influential competitor in the wireless device space, BlackBerry has failed as a device company and has been losing brand recognition since at least as early as 2010. Even Magistrate Judge O'Sullivan expressed surprise to learn that BlackBerry competes in this field:

> MR. TARNEY:
> . . . . And so all of those patents are things that BlackBerry came up with, you know, during the development of, you know, their BlackBerry handheld devices and which we think that the industry is widely making use of today.
> THE COURT: *Does BlackBerry still produce a phone?*

*See* January 3, 2017, Transcript of Discovery Hearing Proceedings before Magistrate Judge O'Sullivan, at 12.

It is also noteworthy that Plaintiff did not seek a preliminary injunction against BLU. If Plaintiff sincerely believed that immediate relief was warranted, it would have pursued such relief at the outset of this case. *See, e.g., Roblor*, 633 F. Supp. 2d at 1347. *See also Dorman Prods. v.*

3

*PACCAR, Inc.,* 2014 U.S. Dist. LEXIS 82069, at *6 (E.D. Pa.) (patentee "has not moved for a preliminary injunction in this case, which undermines its arguments regarding undue prejudice"); *Zillow, Inc. v. Trulia, Inc.*, 2013 U.S. Dist. LEXIS 144919, *21 (W.D. Wash.) ("Many courts have found . . . that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief.").

Ultimately, however, Plaintiff's admission that it sent two notices in 2015[2]—notices sent on November 21 and December 8, 2015, *see* Opposition at 1-2—and then waited nearly a year, until late August, 2016, before commencing this action, is fatal to its claim of prejudice. That delay alone precludes any claim of prejudice if this action is stayed. *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, 2014 WL 1647399, at *2 (N.D. Cal.)("[T]he length of the time that Riverbed waited to initiate this lawsuit against Silver Peak on the '580 and the '688 Patents undermines any claim of prejudice by delay."); *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, 2014 WL 2505166, at *4 (N.D. Ill.) (stay would not cause undue prejudice where patent holder waited two years to file the complaint; the court also noted that if loss of market share was a real concern, the patent holder would have filed sooner).

Plaintiff's own dilatory conduct precludes it from making a credible claim of prejudice now that IPR Petitions involving some of the patents-in-suit have already been filed with the PTAB, and it has been put on notice that other IPR's for the remaining patents will be filed as

---

[2] While Plaintiff has attempted to characterize these "notices" as "licensing offers," the fact remains that these letters include accusations of infringement. Unsurprisingly, Plaintiff did not attach the "notices" to its Opposition, the earlier of which is attached as Exhibit 1. The "notices" include an offer to provide BLU with claims charts supporting its infringement contentions; yet, despite repeated requests during this litigation, Plaintiff intentionally withheld and delayed disclosure of those same charts until late December, after the time for amending pleadings had passed. The other "notices" are not attached because they have been improperly designated by BlackBerry as confidential.

quickly as possible, and hopefully within the next two (2) to three (3) weeks.  Accordingly, this factor weighs in favor of a stay.

II. **Despite Plaintiff's Characterization Of The Progress Of The Case, This Case Is Far From Completed And Plaintiff Cannot Deny That It Also Now Seeks To Re-Open The Pleadings.**

As the Court is no doubt aware, Magistrate Judge O'Sullivan issued a Report and Recommendation ("R&R") in connection with BLU's Motion to Dismiss.  The R&R recommends dismissal of those claims of the patents-in-suit to the extent those claims were not expressly identified in the Amended Complaint. *See* [DE 136].  While Plaintiff objects to the R&R, Plaintiff is nonetheless requesting in its Objections to the R&R, that it be permitted to now file a Second Amended Complaint, some four (4) months after the close of all pleadings and approximately 40 days before the close of discovery, so as to "re-plead the full scope of its asserted claims, pursuant to the" R&R. *See* [DE 144], at 10.  Thus, Plaintiff is seeking to re-open the pleadings to expand the scope of the claims at issue from 28, to an astounding 184, notwithstanding that doing so will likely have the effect of either creating significant prejudice to the Defendant, or delaying the trial in this matter.

Indeed, re-opening the pleadings in this action on the eve or after the currently-ordered deadline for expert disclosures, will likely necessitate, at the very least, an extension of the expert deadlines and an extension of the close of discovery.  In accordance with the Magistrate's Report and Recommendation, BLU's experts will be confining their opinions to those 28 patent claims asserted in the current Amended Complaint.  In the event that Judge Moreno grants Plaintiff leave to file a Second Amended Complaint at this stage in the litigation, BLU's experts will have to render new opinions addressing an additional 156 claims of the patents-in-suit that Plaintiff failed to include or reference in the current Amended Complaint.

Since the full extent of the consequences of re-opening the pleadings is not presently known, it strains credulity for Plaintiff to suggest that discovery is nearly complete. Indeed, only four (4) depositions have been taken by the parties. Between the inventors of the patents-in-suit, multiple experts (over 12) and the other third-party witnesses that Plaintiff identified in discovery, there are more than 50 depositions still to be taken. While it is perhaps understandable that Plaintiff would rather BLU not take these depositions, the fact remains that there is a great deal of discovery needed to be taken before this action is ready for trial.

### III. A Stay Will Simplify the Issues.

Plaintiff's argument that a stay does not have the potential to vastly simplify the issues ignores the complexity of the instant case. There are 15 patents-in-suit with 28 currently asserted claims. Plaintiff seeks to only further complicate this case by adding an additional 156 claims. Plaintiff argues that because the stay does not have the potential to resolve all of these numerous issues that there is simply no possibility for simplification. However, Plaintiff makes no effort to distinguish the case law cited in BLU's Motion to Stay for the proposition that there is a significant potential for issue simplification even when not all of the patents-in-suit are subject to an IPR petition. Instead, Plaintiff cites to inapposite cases with differing facts and significantly fewer patents and claims at issue.

Indeed, if only *one* of the patents subject to the IPR petitions is invalidated, potentially ten or more claims will no longer be at issue. Plaintiff should not be allowed to simultaneously unduly complicate this case through vastly increasing the claims at issue and the cost of litigation, while prohibiting BLU from seeking respite through the statutorily enacted cost-effective IPR procedure. Even if the PTAB does not invalidate any of Plaintiff's patents, this Court will benefit from the PTAB's considerable experience in analyzing the claims.

**IV.     PTAB Statistics Are A Relevant Consideration.**

While Plaintiff attempts to take issue with the cited PTAB statistics, the fact remains that PTAB statistics reveal that it is highly likely that, given the sheer number of claims potentially at issue, at least some of those claims of the patents-in-suit will be invalidated. That in turn, will simplify the issues in the case.

BLU cited statistics based upon actual PTAB decisions, as reported by Docket Navigator, a highly regarded service. Blackberry has not been able to dispute or rebut those statistics. Indeed, numerous courts have recognized the high likelihood that IPR petitions will be granted, and a correspondingly high likelihood that IPR proceedings will result in the cancellation of one or more claims. *See, e.g., Select Comfort Corp., v. Tempur Sealy Int'l, Inc.*, 2014 WL 12600114, at *4 (D. Minn.)(where the USPTO's current statistics indicate a 3–out-of-4 chance that the USPTO will grant the petition for an IPR, it is not sheer speculation on the part of this Court to conclude that the USPTO will more likely than not grant review of some or all of the claims in the petition); *Procter & Gamble Co. v. CAO Grp., Inc.*, 2014 WL 3573597, at *2 (S.D. Ohio)(the fact that 84% of all Petitions for IPR are granted is a compelling statistic); *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, 2014 WL 2505166, at *4 (N.D. Ill.)(there is an 82% probability that the USPTO will institute a review of the petitioner's petition, and a more than 92% likelihood that one or more of the claims of the patent at issue will be amended or cancelled); *Employment Law Compliance, Inc. v. Compli, Inc.*, 2014 WL 3739770, at *2 (N.D. Tex.)("Although there is a chance the patent claims will emerge from the reexamination process unchanged, the statistics indicate that is unlikely."). Indeed, the cases and statistics cited by BLU in its Motion to Stay are far more favorable to BLU than those cited by Plaintiff.

Against this background, Plaintiff's suggestion that it is impossible to draw any reliable conclusions from PTAB decisions is misplaced, if not contrary to law and fact. The one undeniable reality that comes out of the PTAB statistics is that the majority of patents issued should not have been, and upon review, some or all of the claims of those patents are being invalidated. This significant probability of the likelihood of the institution of an IPR is not unusual given the lower burden of proof necessary to invalidate claims or patents in the PTAB, versus in district court litigation.[3]

## V. Plaintiff's Procedural Arguments Regarding the IPR Proceedings Are Misleading.

While Plaintiff complains that a stay pending the resolution of the IPR Petitions will result in considerably delay, Plaintiff's arguments regarding the length of these proceedings presume that Plaintiff itself will delay those proceedings as long as procedurally possible.

In reality, IPR procedures are subject to accelerated rules imposing strict time-frames. In large part, "Congress's purpose in creating IPR" was to create "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Microsoft Corp. v. Proxyconn, Inc.,* 789 F.3d 1292, 1308 (Fed. Cir. 2015) (quoting H.R. Rep. No. 112-98, pt. 1, at 40 (2011)) (internal marks omitted). The IPR serves as "an inexpensive substitute for district court litigation and allows key issues to be addressed by experts in the field." 157 Cong. Rec. S5319 (Daily Ed. Sept. 6, 2011) (Statement of Sen. Kyl).

Statutes and regulations limit the duration of an IPR proceeding. After the IPR petition is filed, Plaintiff *may* file a "preliminary statement" within three months. It is not required to do so.

---

[3] It is well known in district court litigation that a patent is presumed valid, and that it requires clear and convincing evidence to invalidate that patent. However, the standard for invalidating patents at the PTAB through an IPR is by a mere preponderance of the evidence, and the standard for *accepting* a patent for IPR review is now a mere "reasonable likelihood" that the petitioner would prevail with respect to at least one claim of the petition. 35 U.S.C. §§ 314(a), 316(e).

The statute explicitly allows for—if not encourages—the Plaintiff to "expedite the proceeding by waiving the preliminary response." 37 C.F.R. § 42.107 (a)-(b). The PTAB must then decide whether to institute IPR within three months of the filing of the preliminary response, or, if no response is filed, by the last date on which a response may be filed. 35 U.S.C. § 314(b). Plaintiff's "timeline" not only ignores its own ability to expedite the proceedings, and the regulations encouraging plaintiffs to do so, but presumes that Plaintiff and the PTAB will both take the maximum time allowable by statute. *See also Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, 2014 WL 2511308, at *4 (W.D. Mo.) ("[I]n 2013 the PTO took an average of 63 days to [decide whether to institute IPR] rather than the full 90 days permitted by statute."). In fact, Plaintiff tacks on an additional 2-3 weeks for mailing notices even though BLU will notify Plaintiff of the filing of the IPRs on the day they are filed.

Plaintiff is correct that BLU has not yet filed IPR Petitions directed to the balance of the patents-in-suit. In large part, this is due to BLU's efforts trying to meet the current expedited court imposed expert disclosure deadlines.[4] However, since the invalidity expert opinions necessarily involve the same or similar arguments to those which appear in the IPR Petitions, the balance of the IPR Petitions—the petitions that will be filed in addition to the four petitions that Google Inc. already filed—will be filed in the next few weeks.[5]

---

[4] BLU filed objections to the Magistrate Judge's Order imposing expert deadlines ahead of when BLU's experts anticipated completing their work. *See* [DE 143]. Nonetheless, BLU is working diligently to meet the present deadlines, no matter how unrealistic they may be.

[5] Astoundingly, Plaintiff presents e-mail communications, and specifically a comment from Mr. Gale that involved the IPR Petitions, and then proceeds to mischaracterize that communication as involving the Motion to Stay. Consistent with BLU's counsels' comments to Plaintiff's counsel, BLU was prepared to show its IPR Petitions to Plaintiff *prior* to their filing so that the parties could discuss a possible resolution of those petitions and this case. However, it appears that BLU's offer has fallen on deaf ears.

**VI.    The Other Case Law Upon Which Plaintiff Relies Is Inapposite.**

In addition to the *Davol* case addressed above, a number of the other cases that Plaintiff cites in its Opposition are factually inapposite.

For example, *Barrata v. Homeland Housewares, LLC,* 2007 WL 4365596 (E.D. Va.), involved a request for re-examination made ***three (3) years*** after litigation commenced, and after one stay had already been granted. Here, Google filed the first four IPR petitions within 7 months of the commencement of litigation, and BLU will file the balance of the IPR petitions within the next few weeks.

Likewise, in *SCVNGR v. ECHARGE Licensing,* 2014 WL 4804738 (D. Mass.), the party seeking a stay only filed IPR petitions on three of the eight patents in suit. Here, Google Inc. filed IPR petitions on three of the patents-in-suit, and BLU will be filing IPR petitions on the remainder of the patents-in-suit.[6]

**VII.   Conclusion.**

For the foregoing reasons, BLU respectfully requests that the Court stay this action pending conclusion of the IPR Petitions directed to the patents-in-suit.

---

[6] BLU may also be filing different IPR petitions on the same patents as Google.

Respectfully submitted,

By: /s Javier Sobrado
    James A. Gale / Fla. Bar No. 371726
    E-Mail:  JGale@Cozen.com
    Lawrence S. Gordon / Fla. Bar No. 382361
    E-Mail:  LGordon@Cozen.com
    Samuel A. Lewis / Fla. Bar No. 55360
    E-mail:  SLewis@Cozen.com
    Javier Sobrado / Fla. Bar No. 44992
    E-mail:  JSobrado@Cozen.com
    Matthew N. Horowitz / Fla. Bar No. 98564
    E-mail:  MHorowitz@Cozen.com
    COZEN O'CONNOR
    One Biscayne Tower, Suite 3000
    2 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone:  305-358-5001
    Telefax:  305-358-3309

    and

    Bernard L. Egozi / Fla. Bar No. 152544
    E-mail:  begozi@egozilaw.com
    Egozi & Bennett, P.A.
    2999 NE 191st Street, Suite 407
    Aventura, FL 33180
    Telephone:  305-931-9342
    Telefax:  305-931-9343

    ***Counsel for BLU***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the CM/ECF service on April 19, 2017 on all counsel or parties or record on the Service List below.

/s Javier Sobrado

**SERVICE LIST**
*Blackberry Limited v. BLU Products, Inc.*
Case No. 1:16-cv-23535-FAM

| | |
|---|---|
| Ching-Lee Fuduka<br>Todd M. Simpson<br>Caroline Bercier<br>Sidley Austin LLP<br>787 Seventh Avenue<br>New York, NY 10019<br><br>David T. Pritikin<br>Douglas I. Lewis<br>Scott R. Lassar<br>Sidley Austin, LLP<br>One S. Dearborn<br>Chicago, IL 60603 | Thomas N. Tarnay<br>R. Seth Reich Jr.<br>Sidley Austin, LLP<br>2021 McKinney Avenue, Suite 2000<br>Dallas, TX 75201<br><br>Marcos D. Jimenez<br>Audrey M. Pumariega<br>McDermott Will & Emery LLP<br>333 Avenue of the Americas, Suite 4500<br>Miami, FL 33133 |

LEGAL\30123374\1